**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0911n.06**
**Filed: November 18, 2005**

**No. 04-2065**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| RONALD J. NIEMASZ, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JO ANNE B. BARNHART, | ) | EASTERN DISTRICT OF MICHIGAN |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MERRITT, MOORE, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Ronald Niemasz seeks review of the district court's determination that an administrative law judge (ALJ) permissibly denied his application for disability benefits under the Social Security Act. Because the ALJ used the proper standard to evaluate Niemasz's claim and because substantial evidence supports the ALJ's finding that Niemasz's condition has improved to the point where he no longer has a compensable disability, we affirm.

I.

Born in 1960, Ronald Niemasz worked as a foreman for 17 years before injuring his back in November 1996 while lifting a heavy object at work. After the injury, his treating physician, Dr.

Easton, diagnosed severe degenerative disc disease and central disc protrusions, conditions that cause chronic lower back pain. Conservative treatment of his injury (physical therapy and pain medication) failed to provide relief, and Dr. Easton soon diagnosed more back abnormalities, including a herniated disc. Dr. Easton eventually recommended, and in December 1997 Niemasz underwent, thoracic spine surgery with discectomy (which removes a herniated disc to relieve pressure on surrounding nerve roots) and fusion (which stops the motion at a vertebral segment to decrease pain generated by the joint).

At an examination two weeks after the operation, Dr. Easton noted that Niemasz's "x-rays today look good" and that he "is feeling well" despite reporting "that he is having persistence of some like symptoms." JA 187. About eight weeks after surgery, Dr. Easton again noted Niemasz "is doing well" but that "[h]e still has some persistence of his symptoms," which Dr. Easton considered "normal for his situation." *Id*.

Niemasz continued to complain of pain to Dr. Easton and other specialists, although x-rays demonstrated that his back was fused and healing properly. In November 1998, Dr. Friedman, a neurological surgeon, interpreted Niemasz's test results as "suggestive of some spinal cord dysfunction." JA 259. In January 1999, Dr. Easton concluded that Niemasz had a "permanently disability." JA 281. In reaching this conclusion, he stated that Niemasz was "permanently impaired from doing functions at work and home" and that he "has to have the ability to sit/stand during any point in time during the day and [ ] cannot lift more than five pounds," "cannot do any lifting, twisting, [or] bending," and "needs unrestricted rest." *Id*. At roughly this same time (December

1998), a government doctor concluded that Niemasz could perform light work with some limits.

On October 6, 1998, Niemasz filed an application for disability insurance benefits based on pain and muscle spasms in his lower back and legs. After the Social Security Administration denied the application, Niemasz sought a hearing. After the hearing, the ALJ granted Niemasz's application for benefits for a closed period of time—beginning on the date he injured his back at work and ending on January 26, 1998—and denied his request for benefits after that date. The Appeals Council affirmed the ALJ's finding of disability for the closed period but found insufficient his explanation for denying Niemasz's benefits afterwards. The Council vacated that portion of the opinion and remanded the case for a new hearing.

At the second hearing, Niemasz told the ALJ that his symptoms have persisted since his surgery and that his pain has worsened. Niemasz also presented several additional pieces of evidence about his condition. In a letter dated April 26, 2001, Dr. Easton noted that Niemasz continued to have "symptoms of numbness in his legs and pain in his back and buttocks." JA 289. An MRI performed in December 2000 revealed a new disc herniation. Dr. Easton also noted that the most recent MRI revealed three herniations, and commented that "[t]his patient may require more surgery in the future." JA 289. He repeated his earlier opinion that Niemasz "is permanently disabled," "cannot do any lifting over 5 lbs., no twisting, bending, or pushing" and "can sit and stand as tolerated with unrestricted rest." *Id*.

Accepting Niemasz's treatment requirements and allegations of pain, a vocational expert testified that Niemasz would be unable to perform any jobs in the national economy. When the ALJ

posed a variation on this question to the same vocational expert—namely, a hypothetical person of the same age, with the same education and work experience as Niemasz, who could perform routine tasks in a sedentary job that required him to lift no more than five pounds, did not require twisting or bending and afforded him the option of sitting, standing and changing positions at will—the expert identified a number of jobs available to someone under these restrictions.

At the end of the second hearing, the ALJ again found that Niemasz was not entitled to disability benefits after January 26, 1998. He found Niemasz's residual functional capacity for sedentary work consisted of "no lifting over 5 pounds, a sit/stand option, no twisting or bending and only simple and routine tasks." JA 19. Based on this assessment, the ALJ found that Niemasz could perform a significant number of jobs in the national economy, including "clerical work," working as a "cashier in a self-serve gas station," and "inspection and sorting" work. JA 20.

The Appeals Council denied Niemasz's request for review. Niemasz sought review in the district court, where a magistrate judge recommended that the court grant summary judgment in favor of the Commissioner. The district court accepted the magistrate's recommendation and affirmed the ALJ's decision.

## II.

We give fresh review to the district court's summary judgment decision. *Walker v. Sec'y of HHS*, 980 F.2d 1066, 1069 (6th Cir. 1992). Because the Commissioner adopted the ALJ's decision as the Commissioner's own, it is the ALJ's decision that we review, *Wilson v. Comm'r of Soc. Sec.*,

No. 04-2065
*Niemasz v. Commissioner*

378 F.3d 541, 543–44 (6th Cir. 2004), and we will uphold that decision when substantial evidence

supports it, 42 U.S.C. § 405(g); *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004).

On appeal, Niemasz argues (1) that the evidence establishes that he was disabled after the

closed period and (2) that the ALJ failed to apply the required "medical improvement" standard in

evaluating his claim.

A

With respect to the first argument, Niemasz contends that the ALJ failed to account for his

complaints of pain and the opinions of his treating physician (that he was "permanently disabled"

and required "unrestricted rest"). Attempting to bolster these contentions, he points out that the ALJ

"cites no documentary, testimonial or other medical opinion or evidence[] to discount Plaintiff's

complaints or his treating physician's conclusions." Niemasz Br. at 14.

The ALJ, however, cited medical examinations indicating that Niemasz had not experienced

total motor loss, muscle weakness or atrophy, or loss of reflexes. These materials constitute

objective data that an ALJ may use to assess subjective complaints of pain. *See* 20 C.F.R.

§ 404.1529(c)(2). Although Niemasz testified that he was severely restricted in his daily activities,

he acknowledged that he could walk short distances and stand for limited periods of time. And in

a questionnaire Niemasz filled out on November 24, 1998, he noted that he could perform some

chores at home, including doing the "dishes" and "sit[ting] and fold[ing] clothes." JA 118. All of

this amounts to sufficient evidence to support the ALJ's finding that Niemasz can perform sedentary work that involves lifting very light objects, allows him discretion to sit or stand and allows him to avoid twisting or bending his back.

As for Dr. Easton's opinions, we (like the ALJ) are not sure what to make of his conclusion that Niemasz needed "unrestricted rest." The ALJ noted that Dr. Easton provided "no explanation" for this assessment, ALJ Op. at 3, and we agree with the ALJ that such a conclusory statement cannot by itself support a finding of disability. Taken literally, this conclusion is in tension with Dr. Easton's assessment that Niemasz can do some lifting (just not over five pounds) and can sit and stand (so long as he does not twist or bend). To the extent the phrase means something less than absolute rest, Niemasz fails to explain why the restriction would not be covered by the option to sit or stand that the ALJ included in his findings regarding Niemasz's residual functional capacity. As we are not aware of a single federal or state case that refers to, much less accepts, a limitation of "unrestricted rest," the ALJ was not required to accept Dr. Easton's conclusory statement when it lacked elaboration and connection to a specific aspect of Niemasz's condition. *See Wilson*, 378 F.3d at 544 (a treating physician's opinion receives controlling weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence") (quoting 20 C.F.R. § 404.1527(d)(2)).

Also without merit is the applicant's reliance on Dr. Easton's opinion of "permanent disability." A treating physician's disability conclusion cannot bind the Commissioner, who retains authority to decide the ultimate issue of disability. *See* 20 C.F.R. § 404.1527(e)(1). Under the

Commissioner's regulations, disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In Niemasz's case, the ALJ explained, "the medical evidence does not indicate that [he] is precluded from all work activity." ALJ Op. at 4. Because the vocational expert listed a number of jobs that Niemasz could perform under all of the other limits that his treating physician described (aside from truly "unrestricted rest"), substantial evidence supports the ALJ's finding that he is not "disabled" under the statutory definition of that term. *See* 20 C.F.R. § 404.1505 (a disabled person "must have a severe impairment(s) that makes [him or her] unable to do [his or her] past relevant work . . . or any other substantial gainful work that exists in the national economy.").

B.

In advancing his second argument, Niemasz correctly states the ground rules for assessing a closed-benefits claim. Once an ALJ finds a claimant disabled, he must find a medical improvement in the claimant's condition to end his benefits, a finding that requires "substantial evidence" of a "medical improvement" and proof that he is "now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1).

In criticizing the ALJ's treatment of the closed-benefits claim, Niemasz contends that the ALJ did not apply this standard because he never "mentions that he is applying" it. Niemasz Br. at 22. But even though the ALJ did not mention the standard by name, he did apply the comparison

that the standard requires. In his first decision, the ALJ found Niemasz disabled from the date of

his injury at work until January 26, 1998. In his second decision, he referred to Niemasz's

conditions during the period of disability by discussing the moderate success of the surgery and the

fact that it altered the conditions that caused his previous disability.

Niemasz next argues that even if the ALJ attempted to apply the medical-improvement

standard, he did so improperly because "it is clear [Niemasz] has basically the same symptoms [after

January 26 as he had before that date]; but objectively, more disc herniations." *Id*. at 27. While that

may be true, it does not alter the reality that we must affirm the ALJ's decision when substantial

evidence supports it, even if the evidence could also support another conclusion. Relying on record

evidence, the ALJ showed that Niemasz's surgery alleviated several components of Niemasz's

condition that had caused the ALJ previously to find him disabled, an analysis that comports with

the medical-improvement inquiry. The ALJ also considered Niemasz's conditions that arose after

the surgery and showed that they did not render him disabled.

Niemasz's characterization of his improvement as a temporary remission also fails to compel

a reversal of the ALJ's decision. When there is a respite in a claimant's impairment, it is true, the

ALJ must ensure that the improvement is permanent before finding that a claimant is no longer

disabled. *See* 20 C.F.R. § 404.1594(c)(3)(iv) (factors to consider include "the longitudinal history

of the impairments, including the occurrence of prior remission, and prospects for future

worsenings"). Back injuries, however, are not generally subject to temporary remissions. *Cf.* Social

Security Administration, Program Operations Manual System § DI 28010.115(B)(2), available at

http://policy.ssa.gov/poms.nsf/aboutpoms (examples of impairments subject to temporary remissions include:  multiple sclerosis, rheumatoid arthritis, many mental impairments, epilepsy, and asthma). Niemasz also failed to present evidence of any temporary remissions in his condition either before or after his surgery. Under these circumstances, substantial evidence supports the ALJ's decision to treat Niemasz's improvement as more than a temporary remission.

III.

For these reasons, we affirm.