**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 07a0318n.06
Filed: May 8, 2007
No. 06-4048

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KELLY V. MORRIS,
  *Plaintiff, Appellant*

On Appeal from the United States District
Court for the Southern District of Ohio

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
  *Defendant, Appellee*

_____/

**BEFORE:  KENNEDY, MOORE, and McKEAGUE, Circuit Judges.**

**KENNEDY, Circuit Judge.**  Kelly Morris appeals the denial of Social Security Disability Insurance Benefits ("DIB") based on the Social Security Administration's (the "Agency") finding that he is not disabled within the meaning of the Social Security Act (the "Act").  On appeal, he argues that the Administrative Law Judge ("ALJ") (1) did not accord sufficient weight to the opinions of Morris' treating physicians, (2) erred in his credibility analysis, (3) did not adequately explain why Morris did not meet the requirements of a listed impairment as specified in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"), and (4) constructed an inaccurate hypothetical for the vocational expert.  We **AFFIRM**.

**BACKGROUND**

Morris has spent over a decade pursuing social security disability benefits.  He first applied for benefits in 1996, claiming he became disabled in 1994.  He claimed disability as a result of a leg injury that occurred in 1989 when he dropped a tool he was using at work, diabetes which was

diagnosed in the spring of 1996, depression for which he began treatment in early 1996, and drug and alcohol abuse. His application was rejected by the Agency initially and after reconsideration. On May 15, 1999, after conducting a hearing, an ALJ found that Morris was not disabled and thus rejected his claim.

In June of 1999, Morris submitted a letter to Appeals Council ("AC") from one of his doctors alleging that his mental condition had worsened. On September 17, 2001, the AC remanded his case to the ALJ to consider the additional evidence. On August 29, 2002, after a hearing, an ALJ again rejected Morris' application, finding that he was not disabled. On December 20, 2002, the AC declined review. On July 24, 2003, the United States District Court for the Southern District of Ohio, upon stipulation of the parties, remanded the case. The stated purpose of this remand was for further development of the medical record regarding Morris' peripheral venous insufficiency and to determine whether it met the requirements of the Listing. On November 2, 2004, an ALJ once again rejected Morris' claim, finding that he was not disabled. On March 17, 2005, the AC declined jurisdiction, at which point the ALJ's decision became the final decision of the Agency. Morris again filed a civil action in the Southern District of Ohio, which referred the case to a magistrate judge. On May 24, 2006, the magistrate judge recommended affirming the Agency. On July 10, 2006, the district court adopted the recommendation. Morris timely appealed.

## ANALYSIS

### A. Standard of Review and Legal Framework

We will affirm the Agency's decision if it is supported by substantial evidence, 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations and quotation marks omitted).

The ALJ followed the five-step sequential evaluation process laid out in 20 C.F.R. § 404.1520. First, he determined whether the claimant was engaged in substantial gainful work activity. Second, he determined whether the medical impairments complained of were severe and met the duration requirement of 20 C.F.R. § 404.1509. The ALJ found that Morris was not performing substantial gainful work and was suffering from severe impairments of sufficient duration; namely, he suffered from chronic stasis dermatitis in his left leg, peripheral venous insufficiency, diabetes mellitus with diabetic neuropathy, hypertension, probable chronic obstructive pulmonary disease and asthma, obesity, major depressive disorder, somatization disorder, personality disorder, alcohol dependence, and cocaine dependence in full remission. Third, the ALJ considered the Listings found in 20 C.F.R. Part 404, Subpt. P, App. 1. If Morris satisfies any of the Listings requirements, he is disabled. Despite Morris' several impairments, the ALJ found that he did not meet the severity requirements of any individual Listing. Fourth, the ALJ assessed Morris' residual functional capacity and whether he could still perform his past relevant work. The ALJ found that he could not perform such work. Fifth, the ALJ considered whether Morris, given his impairments, could make an adjustment to other work. The ALJ found that Morris could make such an adjustment and that there were jobs in both the regional and national economy that Morris could perform. Thus, the ALJ found that Morris was not disabled.

## B. Treating Physicians

Morris contends that the ALJ did not accord proper weight to the reports of his treating physicians. Specifically, he contends that the ALJ inappropriately rejected the opinions of Dr.

Angulo, whom he saw for his leg pain; Dr. Dela Cruz, his primary physician; and Dr. Dolansky, whom he saw for depression. He also provides conclusory allegations that evidence submitted by Dr. Kite was rejected inappropriately.

The Agency's regulations require the Agency to "give good reasons" for discounting evidence of disability submitted by the claimant's treating physicians because "these sources are likely to be the medical professionals most able to provide detailed, longitudinal picture of [the claimant's] medical impairment(s)." 20 C.F.R. § 404.1527(d)(2). Morris argues that the ALJ did not provide good reasons for discounting his physicians' conclusions. We do not agree.

Our review reveals that the ALJ provided a lengthy and thorough discussion of these doctors' reports and findings. Unlike in *Wilson v. Comm'r*, 378 F.3d 541, 545 (6th Cir. 2004), on which Morris heavily relies, the ALJ did not summarily dismiss the treating physicians' opinions. Rather, he detailed, at substantial length, why he found them to be lacking, compared them with other evidence, and ultimately included some of their conclusions in his hypothetical regarding Morris' residual functional capacity. *Wilson*, in contrast, held that an "important procedural safeguard," *Bowen*, 478 F.3d at 747 (citing *Wilson*, 378 F.3d at 547), was violated when the ALJ summarily dismissed the evidence submitted by the treating physician. This safeguard is important because it informs claimants of the reasons for the disposition of their cases and also facilitates appellate review. *Wilson*, 378 F.3d at 544. After this procedural safeguard has been satisfied, the case is reviewed under the substantial evidence standard.

Further, Morris does not point to any specific conclusion that the ALJ disregarded, except for the conclusion that Morris was disabled. "The determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375

4

F.3d 387, 390 (6th Cir. 2004) (alterations in original) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)); 20 C.F.R. § 404.1527(e)(1). The ALJ evaluated the opinions of Morris' physicians (treating and otherwise), adopted those medical opinions it found appropriate, and then presented those opinions in the form of a hypothetical to the vocational expert. There was no error.

**C. Credibility Analysis**

Morris argues that the ALJ erred in holding that a sedentary job could accommodate Morris' need to elevate his feet. The ALJ found that Morris' claims regarding the need to elevate his feet were not credible. Specifically, he found that Morris did not provide any medical support for the need to elevate his feet, that Morris engaged in a number of daily activities that involved standing and walking, and that Morris lacked motivation. While many of the physicians that treated Morris noted that his legs became discolored when he stood for a prolonged period of time and that he had poor circulation and other problems in his legs, none of them prescribed foot elevation. Nowhere in their reports do they detail for how long, at what elevation, or even whether elevating the feet at all would improve Morris' condition. Rather, Morris relies on his bald claim that elevation is necessary and on observations by his social workers and physicians that his legs were discolored. In contrast, the ALJ noted that many of the activities Morris pursues on a daily basis include standing and walking. Notably, Morris visits an elderly friend and cleans his house when he has the motivation. These activities cannot be pursued if his legs are constantly elevated. In addition, the ALJ noted that Morris did not wear Jobst stockings, special stockings designed to improve his condition. While Morris complained that such stockings irritated his skin, indeed several of his doctors also commented on the irritation, his physicians continued to prescribe the stockings despite that irritation.

5

The ALJ found that a sedentary job that allowed Morris to elevate his feet for two hours a day would suffice to accommodate Morris' condition. Because of the paucity of medical evidence and the conflicting evidence of Morris' daily activities, we conclude that substantial evidence supports this determination.

**D. Listings Requirements**

Morris argues that the ALJ erred in determining that he failed to satisfy the Listings requirements. Specifically, Morris appears to argue that his diagnosis of diabetic retinopathy, cataract development, and glaucoma along with retinal hemorrhages and micro-aneurysms in both eyes qualify under the Listing 9.08C, which requires significant impairment of the claimant's vision. Morris has not alleged that his vision has been significantly impaired, nor do his medical records suggest that it has. While he argued before the ALJ that he also met Listing 9.08A, which requires "[n]europathy demonstrated by significant and persistent disorganization of motor function," he has not raised that argument here on appeal. The ALJ's determination is supported by substantial evidence.

Morris also argues that he meets the requirements for Listings 4.11 and 4.12. The ALJ provided a thorough and accurate evaluation of the requirements of Listings 4.11 and 4.12 and explanation of why Morris' condition did not qualify. JA at 694. We find that that conclusion is supported by substantial evidence.

Next, Morris argues that his physical and mental impairments, taken together, are the equivalent of a Listing. The Social Security regulations provide that,

> [i]f [the claimant] ha[s] a combination of impairments, no one of which meets a listing . . ., [the Agency] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments

6

are at least of equal medical significance to those of a listed impairment, [the Agency] will find that [the claimant's] combination of impairments is medically equivalent to that listing."

20 C.F.R. § 416.926(b)(3). Morris does not offer an analogous listed impairment in his argument. Rather, he argues only that, as a result of his mental impairments, he has difficulty in controlling his diabetes. That may be so. However, he has not argued that, as a result, his diabetes is or will imminently be medically equivalent to a Listing. Giving his argument its most favorable reading, he contends that his diabetes might some day worsen to the severity contemplated by the Listings. Medical evidence is to the contrary. While Morris has been diagnosed with diabetes related eye disease, his slight vision loss is correctable. Furthermore, his ophthalmologist Dr. Leeper has consistently noted that Morris' condition was stable. Nor are any of his other physical impairments at risk of imminent, significant decline.

Finally, Morris argues that the ALJ erred by not inferring episodes of decompensation from changes in Morris' medication and increased visits by his social workers. As the Agency points out, Morris identifies only two isolated changes to his medication. In addition, two state agency psychologists found that Morris did not have any episodes of decompensation. As a result, we find that the ALJ's finding is supported by substantial evidence.

### E. Vocational Expert's Testimony

Morris finally argues, summarily, that the ALJ erred in posing his hypothetical to the vocational expert. He reiterates his argument that he had to elevate his feet throughout the day, complains that no limits were placed on his visual acuity in the hypothetical, and notes that no limits were placed on his ability to concentrate and with regard to his anxiety disorder. The ALJ, however, disposed of the elevation argument at length, found that his vision was correctable, and posed a

hypothetical that he found accommodated a person with Morris' mental impairments (sedentary, unskilled, deals more with objects than people). His conclusions are supported by substantial evidence.

## CONCLUSION

Therefore, we **AFFIRM** the judgment of the district court.