NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0482n.06

No. 10-5104

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 14, 2011*

LEONARD GREEN, Clerk

WENDY LOU BLAIR,

    Plaintiff-Appellant,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Western District of Kentucky

---

**Before:**     **BATCHELDER, Chief Circuit Judge, GUY and MOORE, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Wendy Lou Blair appeals *pro se* from the judgment affirming the decision of the Commissioner of Social Security denying her applications for social security disability and supplemental security income benefits. Blair argues that the Commissioner erred by not giving proper weight to the opinions of her treating physician and nurse practitioner. The district court rejected this claim, which was argued through counsel in objections to the magistrate judge's report and recommendation. After review of the record, we affirm.

**I.**

Plaintiff, born in 1967, was 34 years old on the date of alleged disability in August 2002. She is a high-school graduate, attended two years of college, and completed training as a medical assistant. Plaintiff worked previously as a hospital ward and billing clerk, and doing customer service surveys as a "mystery shopper." Although plaintiff continued to work as a mystery shopper after the alleged onset of disability, the work during that period was part-time, from home, and resulted in earnings of less than $4,000 annually. Plaintiff testified that she stopped working completely in November 2004, although she later applied for a secretarial job for which she was not hired. Plaintiff was insured for purposes of the Social Security Act through September 30, 2005.

Plaintiff testified that she lived with her husband and three children (ages 9, 12, and 16), drove a car every day, picked up her children from the bus stop, went to church, and visited relatives and friends. Plaintiff would walk a couple of blocks at her doctor's instructions, managed her own self care, did household chores with her son, and shopped for groceries. Although plaintiff said she used a cane at times, she did not have or use it during the hearing. Plaintiff, who was 5' 8" tall and weighed 256 pounds, claimed to be disabled due to obesity, diabetes, and fibromyalgia, and had a history of repeated surgery to repair an abdominal hernia.

Plaintiff applied for disability insurance benefits on December 23, 2004, alleging that she had been disabled since August 18, 2002. The Commissioner denied the application initially and upon reconsideration, and a hearing was conducted at plaintiff's request on March 10, 2006. The administrative law judge (ALJ) denied the application on June 28,

2006, but the Appeals Council remanded to the ALJ for further consideration on May 24, 2007. On remand, the application was consolidated with plaintiff's separate application for supplemental security income benefits. On September 24, 2008, after a second hearing, the ALJ denied both applications.

The ALJ undertook the required sequential evaluation process and determined at the fourth of five steps that plaintiff was not disabled for purposes of the Social Security Act. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543 (6th Cir. 2004) (describing five-step process); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ found that plaintiff had not engaged in any substantial gainful employment since the alleged onset of disability. Second, the ALJ determined that plaintiff suffered from severe medically determinable physical impairments of obesity, insulin dependent diabetes mellitus, lupus/fibromyalgia, and had a history of repeated surgery to repair an abdominal hernia. Third, there is no dispute that plaintiff's impairments did not meet or medically equal one of the "listed" impairments. At the fourth step, the ALJ determined that plaintiff had a residual functional capacity for medium work with limitations, and concluded that plaintiff was capable of performing her past relevant work because it required only light exertion. This obviated the need to reach the fifth step of the analysis. The claimant bears the burden of proof on all except the fifth step of the analysis. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

The Appeals Council denied plaintiff's request for review on April 14, 2009, and plaintiff, still represented by counsel, filed this action seeking review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On October 28, 2009, the

magistrate judge rejected plaintiff's claims and recommended affirmance. On December 4, 2009, the district court overruled plaintiff's objections, adopted the magistrate judge's findings and conclusions, and affirmed the final agency decision. This *pro se* appeal followed.

**II.**

The decision of the ALJ, which became the final agency decision in this case, is reviewed under the same standard applied by the district court: namely, whether substantial evidence in the record supports the ALJ's findings. *Roberts v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance of evidence. *Id*.

On appeal, plaintiff reiterates her contention that the ALJ failed to give proper weight to the opinions of her treating physician concerning the severity of her impairments. The Commissioner's regulations require that the opinion of a claimant's treating physician be given "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson*, 378 F.3d at 544 (citation omitted) (alteration in original); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if not entitled to controlling weight, the ALJ must decide how much weight to give to a treating physician's opinions taking into account the length of the treatment relationship, frequency of examination, extent of the physician's knowledge about the impairments, amount of relevant evidence supporting that opinion, extent to which the opinion is consistent with the record as a whole, whether

or not the physician is a specialist, and any other relevant factors tending to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6). No special significance is given to an opinion on issues reserved for the Commissioner, however, including opinions about whether the claimant meets the statutory definition of disability. 20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, plaintiff relied on a fibromyalgia questionnaire and residual functional capacity assessment completed by Nurse Practitioner Sharon Benson in December 2005, and later initialed by her treating physician John Kilgallin, MD, in March 2006. A slightly different version of this form completed by plaintiff herself and initialed by Dr. Kilgallin in April 2008, listed problems such as diabetic neuropathy, osteoarthritis, anemia, cognitive difficulties, frequent headaches, and spinal impairments. The ALJ rejected these opinions that checked almost every block and assessed plaintiff to be "practically bedridden," finding that they were not supported by the objective medical evidence. The ALJ explained that the records from Dr. Kilgallin's office did not document the plaintiff's condition as being that severe and ignored evidence considered by the consulting rheumatologists who examined plaintiff. The ALJ concluded that these assessments were completed in an attempt to strengthen plaintiff's disability claim.

Apart from these assessments, Dr. Kilgallin wrote a letter dated March 3, 2008, listing plaintiff's diagnoses, explaining that plaintiff had been unsuccessful in controlling her diabetes and hypertension, and indicating that, while more subjective and difficult to ascertain if controlled, plaintiff's fibromyalgia was "likely to be a prominent cause of her

lethargy." With respect to her diagnosis of lupus, he stated that "one must refer to the notes of a rheumatologist for the assessment on the control of lupus." Dr. Kilgallin emphasized that plaintiff's positive outlook meant that her demeanor did not tend to convey the extent of her distress, and opined that plaintiff was "certainly incapable of holding down a job" and was functionally "unable physically or emotionally to perform basically any type of duty which requires consistent attendance and/or performance."

To the extent that Dr. Kilgallin opined that plaintiff is "disabled" or "unable to work," his opinion is not entitled to weight because that is an issue reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Further, the ALJ found that Dr. Kilgallin's opinions concerning the severity of plaintiff's impairments were inconsistent with the other substantial evidence in the case.

Specifically, in March 2005, plaintiff was evaluated for complaints of abdominal and lower-back pain by Dr. Kevin Moreman. Dr. Moreman found plaintiff to have a normal range of motion, negative straight-leg raising, normal grip strength, and normal ability to walk. Plaintiff was not taking pain medication, except an occasional Lortab, and did not have physical findings to suggest any limitation because of back pain in stooping, bending, reaching, sitting, standing, moving about, carrying, or travel. Plaintiff had undergone a hysterectomy and hernia repair in June 2003, and a repeated surgery to repair an abdominal hernia in November 2004. These surgeries and plaintiff's abdominal pain led Dr. Moreman to limit plaintiff's frequent lifting to only five-to-ten pounds because of an increased risk of

incisional hernia.

Diagnosed with fibromyalgia, plaintiff was evaluated by rheumatologist Dr. Asad Fraser in June 2005.  Dr. Fraser found plaintiff to have good grip strength, normal deep tendon reflexes, and no swelling, synovitis, effusions, or loss of motion in any of her joints. Referred to another rheumatologist, plaintiff was examined by Dr. Kelly Cole in July 2005. Dr. Cole concluded that plaintiff's condition satisfied the criteria for fibromyalgia and found some arthritic changes in plaintiff's knees.  On a return visit to Dr. Cole in August 2005, plaintiff reported her condition as improved, and plaintiff was given a prescription for Lidoderm patches for pain.  When seen in Dr. Kilgallin's office, plaintiff reported that her condition was stable and the patches were helpful.  On four visits in October and November 2005, Benson noted that plaintiff had problems controlling her blood pressure and diabetes and that the problems were caused, in part, by plaintiff's diet.  At one of those visits, plaintiff reported that her fibromyalgia had improved.

Dr. Kilgallin examined plaintiff for the first time since the alleged onset of disability in January 2006, and noted that plaintiff had a little more energy and prescribed a new fibromyalgia medication at a later visit in February 2006.  Dr. Kilgallin saw plaintiff for abdominal pain, diabetes, and nausea and vomiting between April and June 2006, and Benson treated plaintiff for hypertension between July 2006 and September 2007.  Dr. Kilgallin's notes from a visit on September 18, 2007, indicated that plaintiff had headaches and fluctuating blood pressure and blood sugar levels.  Dr. Kilgallin's notes from visits in

early 2008 noted poorly controlled diabetes and leg pain and back tenderness that led to a referral for an MRI. The results of the MRI showed degenerative changes at L5-S1 but were otherwise normal. Notes from an appointment with Benson in April 2008 indicated that plaintiff's diabetes was better controlled with her insulin pump.

On December 29, 2007, plaintiff was examined by Dr. Thomas Coury, a physical medicine and rehabilitation physician. Dr. Coury found that plaintiff was not in acute distress, had normal gait, did not use an ambulatory device, and had no tenderness or masses in plaintiff's abdomen. Dr. Coury noted a history of diabetes, with neuropathy and gatroparesis; fibromyalgia with a history of 16/18 tender points; and recent diagnosis of lupus based on a positive ANA. On examination, he found some decrease in the range of motion in shoulders and elbows; decreased ability to walk heel-to-toe or squat; and pain on palpitation (including 16/18 tender points for fibromyalgia). Dr. Coury concluded that plaintiff had mild-to-moderate restriction in tolerance for stooping, bending, reaching, standing, lifting, carrying, and handling objects, but no evidence of restriction in tolerance for sitting, moving about, or traveling. Dr. Coury also completed the SSA's Medical Source Statement of Ability to Do Work-Related Activities (Physical), finding that plaintiff could frequently lift and carry up to 20 pounds, occasionally lift one hundred pounds, stand or walk one hour without interruption and for a total of five hours out of an eight-hour workday, and sit without interruption for two hours and for a total of eight hours out of an eight-hour work day. Plaintiff could frequently perform reaching, handling, fingering, feeling, pushing and pulling with her hands, and could only occasionally perform climbing, balancing, stooping,

kneeling, crouching or crawling. This, the ALJ found, accurately described plaintiff's residual functional capacity.

Plaintiff emphasized in the district court that fibromyalgia presents subjective symptoms. When objective medical evidence does not confirm the severity of a claimant's pain, the Commissioner will consider a claimant's daily activities; location, duration, frequency, and intensity of the pain or other symptoms; precipitating or aggravating factors; any medication, treatment, or measures used to relieve pain or other symptoms; and other functional limitations or restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.927(c)(3). The ALJ found that plaintiff's claims concerning the intensity, persistence, and limiting effects of the symptoms of her medically determinable impairments were not credible to the extent that they were inconsistent with the residual functional capacity determination. Because credibility is particularly relevant in the absence of sufficient objective medical evidence, the courts will generally defer to the Commissioner's assessment of credibility when it is supported by an adequate basis. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

After review of the record, we find that the ALJ's determination not to accord greater weight to Dr. Kilgallin's opinions concerning the severity of plaintiff's impairments and the extent of plaintiff's functional limitations was supported by substantial evidence.

**AFFIRMED.**[1]

---

[1]The magistrate judge concluded that to the extent that the "treater" opinions were those of Nurse Benson, they were not from an "acceptable medical source" required to establish a medically determinable impairment as listed in 20 C.F.R. § 404.1513(a). However, § 404.1513(d) states that in addition to the acceptable medical sources, evidence from other sources may be used to determine the severity of the

claimant's impairments and how it affects the ability to work and that those sources include nurse practitioners and physicians' assistants. We are satisfied that the ALJ did not disregard the treating physician opinions for this reason, but found that the opinions were not supported by the objective medical evidence or consistent with the other substantial evidence in the record.