NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0375n.06
Filed: June 25, 2008

No. 07-6111

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MARGARET KIDD, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |
| _____ | ) | |

## OPINION

**Before: GIBBONS and SUTTON, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** Claimant Margaret Kidd was denied

disability benefits following a hearing before an administrative law judge ("ALJ").

Subsequently, the Appeals Council denied her request for review, and the United States District

Court for the Eastern District of Kentucky affirmed the ALJ's finding. Kidd filed a timely notice

of appeal. For the following reasons, we conclude that the ALJ's decision was supported by

substantial evidence and affirm the District Court's decision.

_____

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District
of New Jersey, sitting by designation.

1

A. **Kidd's Initial Injuries**

Kidd worked as a teacher's aide until 2004, when she suffered injuries to her back. Kidd was not sure of the date of her injury, but stopped working as a teacher's aide in June 2004. Kidd fell in an accident that September and again injured her back in January 2005. Kidd filed an application for disability benefits in March 2005, alleging that she was unable to work due to various related bodily ailments. The record reflects the notes of several physicians who treated or examined Kidd, as well as a vocational expert who testified before the ALJ on Kidd's employment capacity.

B. **Dr. Nancy West - Treating Physician**

Dr. Nancy West served as Kidd's treating physician from December 2003 to December 2005. After Kidd's initial injury, Dr. West diagnosed Kidd with a fractured disc at the L4-5 level of the lumbar spine and broad-based left paracentral disc protrusion at the C6-7 level of the cervical spine with sac effacement. Dr. West also diagnosed Kidd with osteoporosis, lumbar stenosis, arthritis, and degenerative disc disease. During this period, Kidd complained of back and leg pain. Consequently, Dr. West prescribed Bextra, an arthritis medication, in May 2004.

In February 2005, Kidd reported shoulder pain. Dr. West diagnosed osteoarthritis and acute low back strain, and gave Kidd a prescription of Flexeril, a muscle relaxant. An MRI conducted later that month showed a mild acute L4 compression fracture of the superior endplate, broad posterior bulging at L3-4 with mild central stenosis, and mild bulging at the L4-5 and T12-L1. Kidd also complained of pain when she crossed her legs, but x-rays completed on

her right knee were normal. Dr. West recommended medication and physical therapy.

Kidd underwent physical therapy for approximately six weeks. Notes from Kidd's treatment indicated progress, decreased pain, and increased activity in daily living. On March 30, 2005, Kidd's physical therapist recommended that Kidd continue with therapy three times a week for four weeks. The next day, Dr. West reported that Kidd was improving, although Dr. West noted that she was still unable to sit or stand for extended periods of time. Dr. West also recommended that Kidd continue her medication and physical therapy. Nevertheless, on April 13, 2005, Kidd informed her physical therapist that Dr. West had told Kidd to discontinue physical therapy. Later that year, Dr. West opined that Kidd was "permanently disabled to work[.]" (JA at 164.)

### C.      Dr. Edward Kahn - Orthopedist

In May 2005, Dr. West referred Kidd to Dr. Edward Kahn for an orthopedic evaluation. Dr. Kahn's evaluation revealed that Kidd was tender to percussion in her lumbar spine. Dr. Kahn reviewed Kidd's x-rays and MRI and concurred with the diagnosis of an L4 fracture, though he observed that there was no evidence of spinal cord impingement. A sitting straight leg raising test was normal with no signs of nerve tension. Dr. Kahn gave Kidd two choices: live with the fracture and hope that it heals, or undergo a procedure to stabilize the fracture. Crucially, Dr. Kahn stated that he anticipated that the fracture would heal on its own. Kidd chose to wait.

### D.      Drs. R.K. Brown and M. Allen Dawson - State Agency Medical Experts

State agency medical experts, Drs. Brown and Dawson, examined Kidd's medical records

in April and June 2005. Both physicians concluded that Kidd was capable of lifting/carrying 20 pounds occasionally and 10 pounds frequently. They also noted that Kidd was capable of standing and/or walking for 6 hours out of an 8-hour workday, and similarly, sitting for 6 hours in an eight-hour workday; that Kidd had unlimited ability to push/pull; and that she could occasionally stoop, crouch, and climb ramps and stairs, and kneel or crawl. However, they found that she should avoid exposure to vibration, as well as climbing ladders, ropes and scaffolds.

### E.  Dr. Amr O. El-Naggar - Neurosurgeon

In February 2006, Dr. West referred Kidd to Dr. Amr O. El-Naggar for a neurological evaluation due to her complaints of neck and back pain. Dr. El-Naggar noted mild loss of disc height of L3-4 and an old compression fracture of the superior endplate of L4 which was stable without any significant edema. Dr. El-Naggar observed no evidence of disc herniation or nerve root compression. Kidd's strength was measured at "5/5" involving the upper and lower extremities, with normal bilateral reflexes. There was no dysfunction with gait or coordination, and Kidd was neurologically healthy. Notably, Dr. El-Naggar recommended additional physical therapy and prescribed Celebrex, an anti-inflammatory and pain medication. He recommended that if Kidd did not improve with these measures, she could be referred to the pain clinic for steroid injections.

### F.  William Ellis - Vocational Expert

On March 23, 2006, Kidd appeared at a hearing before the ALJ. At this hearing, the ALJ took testimony from William Ellis, a vocational expert ("VE"). The VE reviewed Kidd's record

of past work and described her work as light and unskilled. The VE testified that there were jobs available for an individual who is limited to light work with sitting, standing, and walking limited to 6 hours during an 8-hour workday, with occasional climbing of stairs or stooping, and with a sit/stand option every 30 minutes. Such jobs in the national economy included working as a production worker (6,500 statewide; 330,000 nationwide) and packer (2,700 statewide; 175,000 nationwide). The VE further testified that there were jobs available with additional restrictions, including work at the sedentary level. Those included clerk and production positions.

### G. Kidd's Account

In her disability questionnaire, Kidd reported that her job as teacher's aide required that she assist teachers by grading and filing papers, working with the children, and taking the children to school and back. She stated that she walked 6 hours, stood 4 hours, and sat 2 hours each day with no climbing, kneeling, crouching, or crawling but with some stooping, reaching, and handling of small and large objects. She reported lifting and carrying papers and supplies up to 10 pounds frequently and 20 pounds occasionally. At the hearing, Kidd testified that she could not sit or stand long and that she experienced constant pain and had to lie down to rest her back. Kidd also testified that she performed daily activities such as washing the dishes, vacuuming, and going to church, but felt pain and had to lie down at times.

### E. The ALJ's Decision

On May 9, 2006, the ALJ issued a decision denying Kidd's application for disability benefits. The ALJ reviewed the evidence pursuant to the five-step sequential analysis set forth in

20 C.F.R. §§ 404.1520 and 416.920. While the ALJ found that Kidd suffered from various conditions, including osteoporosis and degenerative disc disease, the ALJ concluded that Kidd had not been under a "disability" as defined in the Social Security Act, 42 U.S.C. § 423. Rather, the ALJ found that the medical evidence established that Kidd's impairments did not meet or equal any of the listed impairments under the federal regulations. The ALJ determined that Kidd's statements concerning her symptoms were "not entirely credible." (JA at 18.) In addition, the ALJ rejected Dr. West's opinion that Kidd was permanently disabled. Based on this assessment, Kidd's medical records, and the VE's testimony, the ALJ found that Kidd retained the residual functional capacity to resume past relevant work as a teacher's aide. The ALJ also issued an alternative finding that if Kidd could not return to past work, she could perform other jobs existing in the economy, as suggested by the VE.

## II.

Kidd contends that the Commissioner's denial of benefits was not supported by substantial evidence. Specifically, Kidd argues that it was error for the District Court to hold that the ALJ gave good reasons to reject the treating physician's opinion. Kidd also argues that the District Court applied the wrong legal standards to affirm the ALJ's finding that Kidd was capable of performing past relevant work, and that the ALJ failed to develop the record by virtue alone of Kidd's representation by a non-attorney. We address each argument, in turn.

### A. Standard of Review

"'This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g). The substantial evidence standard is satisfied if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, we will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "This is so because there is a zone of choice within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citation and quotation marks omitted). The Court reviews questions of law *de novo*. *Smith-Wilkins v. Sec'y of Health & Human Servs.*, 880 F.2d 864, 866 (6th Cir. 1989). However, the Court may not resolve conflicts in evidence or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

> **B.** **The ALJ's Decision is Supported by Substantial Evidence, and Conforms to the Procedural Requirement to Offer "Good Reasons" to Reject a Treating Physician's Opinion.**

It is well-settled that the ultimate issue of disability is reserved to the Commissioner. *Cutlip v. Sec'y of Health & Human* Servs., 25 F.3d 284, 287 (6th Cir. 1994); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). However, the medical diagnosis of a treating physician is generally accorded substantial deference, and *if uncontradicted*, complete deference. *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987). As the regulations provide, "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the

7

claimant's] medical impairments(s) and may bring a unique perspective to the medical evidence[.]" 20 C.F.R. § 404.1527(d)(2).

If the opinion of a treating physician is not accorded controlling weight, the ALJ must "give good reasons" for reaching a different conclusion. *Id.* When citing "good reasons," the ALJ should consider certain factors outlined in 20 C.F.R. § 404.1527(d)(2), "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source[.]" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). This requirement is a procedural safeguard ensuring that a claimant understands the disposition of his or her case, and that the ALJ provides a record upon which meaningful judicial review may obtain. *Id.*

When a treating physician offers a conclusory opinion concerning a claimant's condition, the ALJ need not credit that view, especially if inconsistent with other diagnoses. *See Cutlip*, 25 F.3d at 287 (rejecting the opinions of treating physicians because "they were conclusory and inconsistent with the other evidence"). Moreover, "the [ultimate] determination of disability is the prerogative of the [Commissioner], not the treating physician[.]" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984); *see also* 20 C.F.R. § 404.1527(e). Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight. *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the ALJ chose not to confer controlling weight to Dr. West's opinion, instead finding that the evidence in the record supported a denial of disability benefits. Kidd argues that

8

the ALJ did not give good reasons for this decision, as mandated by federal regulations. In the ALJ's words, he did not credit Dr. West's diagnosis, *in part*, because "whether the claimant is 'disabled' or able to work is an administrative decision requiring the consideration of medical findings and vocational factors in the context of legal standards and reserved to the Commissioner." (JA at 18.) While Kidd does not dispute the ALJ's synopsis of the law, Kidd contends that the District Court erred when it found that the ALJ's rationale "fulfills the substantive requirements . . . for the ALJ to give 'good reasons' for rejecting the opinion of the plaintiff's treating physician." *Kidd v. Astrue*, No. 06-424, slip op. at 11 (E.D. Ky. July 11, 2007).[1] In other words, Kidd argues that the District Court erred when it cited the ALJ's reservation of the ultimate decision to himself as a sufficient "good reason" alone to discard the treating physician's diagnosis.

Kidd misses the mark. The standard of review "is not whether substantial evidence supports a finding made by the District Court but whether substantial evidence supports a finding made by the [ALJ]." *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986); *see also Stille v. Weinberger*, 499 F.2d 244, 247 (6th Cir. 1974) ("While we have great respect for the analysis and conclusion of the district judge we are not bound by them. We consider first the medical evidence."). After all, we review questions of law *de novo*. *Smith-Wilkins*, 880 F.2d at 866. Thus, this Court will itself determine whether the ALJ offered "good reasons" to discount the treating physician's opinion.

The ALJ's decision and reasoning rejecting Dr. West's opinion is supported by substantial evidence, and fulfills the procedural requirement to provide "good reasons," *see* 20

---

[1] That opinion may be found in Appellant's briefing papers.

C.F.R. § 404.1527(d)(2), to dismiss the opinion of the treating physician. The ALJ first summarized the findings of Drs. West, Kahn, El-Naggar, Brown, and Dawson. While crediting Dr. West's treatment relationship with Kidd, and Dr. West's diagnosis in some respects, for instance, concerning Dr. West's report that Kidd could not sit or stand for long periods of time, the ALJ discounted Dr. West's conclusory opinion that Kidd was disabled. The ALJ supported his conclusion by noting his perception of the inconsistency of Dr. West's ultimate opinion with the diagnoses of treating *specialists* like Drs. Kahn and El-Naggar. *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist."). The ALJ observed that Kidd's "most recent records show that she is improving, physical therapy records indicated excellent progress, decreased pain and increased activities of daily living[], and the claimant reported on her Disability Report that physical therapy and medication improved her mobility." (JA at 18.) This finding is supported by substantial evidence because the record showed that Dr. El-Naggar found Kidd to be neurologically intact with no nerve root compression, and strength measured at normal capacity. Dr. El-Naggar ultimately recommended additional physical therapy, not a more serious measure such as surgery. Similarly, Dr. Kahn recommended a moderate course of treatment and opined that Kidd's L4 fracture would heal with time. State agency medical experts offered comparable recommendations that also differed from Dr. West's ultimate conclusion.

The ALJ additionally found that Dr. West's conclusion was inconsistent with Kidd's daily activities and credibility as a whole. *See Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's

assertions of pain or ailments."); 20 C.F.R. § 416.929(a). The ALJ stated that Kidd's

> daily and social activities are not indicative of a totally incapacitated individual. Documentary and testimonial evidence shows that, in fact, she participates in a variety of activities not commensurate with a mentally or physically handicapped individual. The claimant reported that she remains capable of caring for her personal needs, she cooks, vacuums, does the laundry, washes the dishes, dusts, attends church, and goes shopping.

(JA at 18.) These observations are supported by Kidd's own testimony and the answers she offered on her disability application. (JA at 61-64.)

The ALJ further noted that Kidd's testimony concerning the "intensity, duration, and limiting effects of [her] symptoms are not entirely credible." (JA at 18.) As this Court has held, "[u]pon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has [had] the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). This Court is limited to assessing whether the "ALJ's explanations for . . . discrediting [Kidd] are reasonable and supported by substantial evidence in the record." *Id.*

To this end, substantial evidence supports the ALJ's credibility determination. The ALJ wrote that "[a]lthough [Kidd] testified that she has trouble reaching and turning her head, records do not indicate any significant shoulder or other peripheral joint problems." (JA at 17.) The medical reports offered by specialists Drs. Kahn and El-Naggar showed that Kidd's strength and reflexes involving the upper and lower extremities were normal. In addition, medical reports showed that there was no dysfunction with gait or coordination, and that Kidd was neurologically healthy. Further, regarding Kidd's lifting and carrying capacity, the ALJ found that Kidd's "allegations of her restrictions appear to be somewhat excessive[.]" (JA at 17.) This finding is

11

supported by substantial evidence because Dr. Kahn observed that Kidd had no spinal cord impingement and no signs of nerve tension.

The ALJ's assessment of Kidd's daily activities and credibility, coupled with reports offered by Drs. El-Naggar, Kahn, Brown, and Dawson, led the ALJ to conclude that "the totality of the evidence" shows that Kidd's "impairments have never approached a level . . . necessary to preclude the performance of all work activity." (JA at 17.) Thus, while the ALJ credited Dr. West's treatment relationship with Kidd in some respects, he ultimately found that Dr. West's opinion was offset by a deficit of supportability, consistency, and specialization offered by the balance of Kidd's medical record – factors that are considered by an ALJ in these circumstances. 20 C.F.R. § 404.1527(d)(2). In light of all the aforementioned evidence, the ALJ provided good reasons for discounting the treating physician's conclusory opinion, and substantial evidence supported the ALJ's finding.

Kidd cites our decision in *Wilson* for the notion that an ALJ is required to accord a treating physician's opinion controlling weight where the ALJ does not offer substantive "good reasons" to reject it. *See* 378 F.3d at 545. In *Wilson*, we found that the ALJ's "summary dismissal" offered "by a bald statement" rejecting the treating physician's opinion did not satisfy the "requirement that the ALJ 'give good reasons.'" *Id.* In that case, the ALJ "stated in his ruling that he had 'considered'" the treating physician's opinion, but, despite the treating physician's accurate assessment of the claimant's diagnosis, rejected it. *Id.* Ultimately, we found that, although substantial evidence otherwise supported the Commissioner's decision, reversal was required because the ALJ failed to "give good reasons" for his rejection of the treating physician's opinion. *Id.* at 544.

Our holding in *Wilson* is inapposite to the facts before us here. In the instant matter, the ALJ rejected Dr. West's own conclusory opinion by citing substantial evidence in the record that matched factors outlined in 20 C.F.R. § 404.1527(d)(2). The ALJ's opinion was not a "summary dismissal," but rather reflected a detailed, thorough examination of the evidence in the record, with particular emphasis on the inconsistency of Dr. West's conclusion with the recommendations of Drs. Kahn, El-Naggar, Brown, Dawson, and Kidd's own testimony. Plainly, unlike the ALJ in *Wilson*, the ALJ here provided good reasons to reject the treating physician's conclusory determination of disability.

Dr. West's opinion on the issue of Kidd's disability is an issue ultimately reserved to the judgment of the Commissioner alone, and need not be accorded controlling weight. Further, the ALJ offered good reasons, supported by substantial evidence, to reject Dr. West's opinion of Kidd's disability. Thus, we find that the ALJ's finding in this regard is without error.

**C.  The Court Will Not Entertain Kidd's Arguments Concerning Her Past Relevant Work Because Kidd Did Not Preserve Such Arguments with the District Court.**

Kidd next argues that the ALJ erred in finding that Kidd was capable of performing her past relevant work as a teacher's aide. Specifically, Kidd asserts that the ALJ[2] employed the

---

[2] Kidd also intimates that the <u>District Court</u> – and not the ALJ – erred by employing the wrong regulatory rulings to reach its decision regarding Kidd's capacity to perform her past relevant work. However, as Kidd even concedes, "this Court's review is of the ALJ decision[.]" (Appellant's Reply Br. at 5 n.3.) As Kidd correctly surmises, we consider questions of law *de novo* and concern ourselves with whether the <u>*ALJ*</u>'s decision may stand. Nevertheless, Kidd attempts to maneuver around our standard of review by contending that, in contrast to the ALJ's *mild* reliance on the wrong regulatory ruling, the District Court's reliance on the wrong regulatory ruling was "dispositive," thus somehow requiring Kidd to raise her argument before *this* Court, only *after* the District Court's ruling. Kidd's awkward sleight of hand does not work.

13

wrong legal standards, derived from regulatory rulings, to reach his conclusion that Kidd was capable of performing her past relevant work. However, Kidd did not raise this argument with the District Court.

"It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff,* 428 U.S. 106, 120 (1976); *see also Ralph Shrader, Inc. v. Diamond Int'l Corp.,* 833 F.2d 1210, 1214 (6th Cir. 1987) ("We have held that we will not review an issue not raised in the district court."). We have previously applied this rule in the context of cases concerning denial of disability benefits. *See, e.g.*, *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149 (6th Cir. 1990) ("[The claimant] cannot raise an issue before the court of appeals that was not raised before the district court."). On rare occasions, we have deviated from the general rule where there are "exceptional cases or particular circumstances" or where the rule would produce "a plain miscarriage of justice." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988) (internal citation omitted). Still, the Supreme Court of the United States has stated that this matter is "left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton*, 428 U.S. at 121.

Here, Kidd does not argue that any particular or exceptional circumstances exist; nor will the exclusion of Kidd's argument result in a "plain miscarriage of justice." *Pinney Dock*, 838 F.2d at 1461. The District Court's reasoning echoed regulatory rulings cited and relied upon by the ALJ, (*see* JA at 18), and thus, Kidd had a fair opportunity to pursue her argument before the

---

In his finding, the ALJ expressly cited one of the regulatory rulings that Kidd now claims for support in her fresh argument before this Court. (JA at 18.) Thus, Kidd had the opportunity to raise this argument at the District Court level, but failed to do so.

14

court below. Accordingly, because the past relevant work issue was not preserved below, and because Kidd presents no compelling circumstances to warrant a departure, her argument regarding past relevant work is not properly before this Court for consideration.

**D.    The ALJ Properly Developed the Record, Irrespective of Kidd's Representation by a Non-Attorney.**

Kidd, relying on *Lashley v. Secretary of Health and Human Services*, contends that the ALJ failed in his duty to properly develop the record. 708 F.2d 1048 (6th Cir. 1983). In that case, this Court stated that "an administrative law judge's basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appeals before him." 708 F.2d at 1051. There, the claimant had suffered a stroke and every treating physician had determined that he was permanently disabled. *Id.* at 1050-51. However, the evidence of the treating physicians was in conflict with the conclusions of the consultative examiners hired by the Social Security Administration. At the hearing before the ALJ, the claimant was questioned only superficially about his ability to perform work. *Id.* at 1052-53. Given the claimant's health limitations, this Court reasoned that the ALJ had a heightened duty to develop the record. *Id.* at 1053. Accordingly, this Court held that the ALJ failed to properly develop the record because the ALJ did not adequately probe the claimant's capabilities in light of the diverging accounts offered by medical experts. *Id.*

The facts in the instant case are far different from those before the Court in *Lashley*. Unlike the claimant in *Lashley*, Kidd presented (1) no evidence of any impaired mental ability; or

(2) any evidence to the court below arguing *how* the ALJ failed to properly develop the record.[3] The fact that Kidd appeared without counsel is not alone cause for error. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) ("[W]hen a claimant appears without counsel, the mere fact that a claimant was unrepresented is not grounds for reversal."). In fact, federal regulations permit claimants to choose non-attorneys to represent them at the administrative level. *See* 42 U.S.C. § 406(a); 20 C.F.R. § 404.1705(b). "Rather, we examine each case on its own merits to determine whether the ALJ failed to fully develop the record and therefore denied the claimant a full and fair hearing." *Duncan*, 801 F.2d at 856.

As the court below noted, "Mrs. Kidd was a high school graduate who was articulate and was represented by an individual who described himself as a paralegal and who was capable of making detailed arguments about the testimony and the Commissioner's Regulations." *Kidd*, No. 06-424, slip op. at 13. The Court also adds that Kidd's non-attorney representative carried out a lengthy, effective direct examination of Kidd, as well as a short cross-examination of the VE. Kidd's representative also concluded the hearing with a commanding summary of Kidd's case. (*See* JA at 195-97.) There is, in short, nothing in this record to support a claim that the absence of counsel prevented Kidd, her non-attorney representative, or the ALJ, from fully developing the claims and relevant evidence, or that this case falls within the *Lashley* "special circumstances" sphere. Thus, Kidd's contention that the ALJ failed to properly develop the record is without merit.

---

[3] Kidd asserts, for the first time on appeal, that the ALJ "could easily have obtained information about whether the teachers' aide position, as it is usually performed, accommodates the need to change positions every 30 minutes." (Appellant's Br. at 21.) However, as noted *supra*, the Court will not entertain arguments that were not properly made before the District Court. *Shrader*, 833 F.2d at 1214.

16

Kidd last argues that the ALJ erred in his alternative finding that Kidd was capable of performing other jobs in the national economy. Because we find that the ALJ's primary denial of benefits is supported by substantial evidence, we do not reach Kidd's alternative argument.

**III.**

We AFFIRM the District Court's affirmance of the ALJ's decision denying Kidd's application for disability benefits.