RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0255P (6th Cir.)
File Name:  04a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

ROBERT M. WILSON,
     *Plaintiff-Appellant,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,
     *Defendant-Appellee.*

No. 03-1588

―――――――――――

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 02-00197—Wendell A. Miles, District Judge.

Argued: June 16, 2004

Decided and Filed:  August 2, 2004

Before:  GILMAN and ROGERS, Circuit Judges;
FORESTER, Chief District Judge.[*]

―――――――――――

[*] The Honorable Karl S. Forester, Chief United States District Judge
for the Eastern District of Kentucky, sitting by designation.

―――――――――――

## COUNSEL

**ARGUED:**  Lewis M. Seward, SEWARD, TALLY &
PIGGOTT, Bay City, Michigan, for Appellant.  James B.
Geren, OFFICE OF THE GENERAL COUNSEL, SOCIAL
SECURITY ADMINISTRATION, Chicago, Illinois, for
Appellee.  **ON BRIEF:**  Lewis M. Seward, SEWARD,
TALLY & PIGGOTT, Bay City, Michigan, for Appellant.
James B. Geren, OFFICE OF THE GENERAL COUNSEL,
SOCIAL SECURITY ADMINISTRATION, Chicago,
Illinois, for Appellee.

―――――――――――

## OPINION

―――――――――――

ROGERS, Circuit Judge.  Robert M. Wilson, the
plaintiff/appellant, challenges the decision of an
administrative law judge (the "ALJ") of the Social Security
Administration, which became the final decision of the
Commissioner, denying Wilson's application for Disability
Insurance Benefits ("DIB") under Title II of the Social
Security Act.  Because the ALJ, by failing to articulate
reasons for discounting the opinion of Wilson's treating
physician, violated the agency's own procedural regulation,
we vacate the judgment of the district court affirming the
ALJ's decision and remand for further proceedings consistent
with this opinion.

Wilson worked as a deputy sheriff from 1960 until 1985,
when he retired because of a heart attack.  He then found
employment as a manual laborer with the Howard City Paper
Company, but he resigned from that position in 1986.  Wilson
did not engage in any full-time work after leaving the paper
company, but worked part-time as the weekend manager for

a flea market around 1999. Wilson's insured status for purposes of DIB expired on March 31, 1995.

Wilson underwent three hernia repair surgeries in 1991, 1992, and 1994, respectively. Wilson claims that, as a result of the surgeries, he suffers from "entrapment neuropathy," a condition involving a nerve fiber tied up in a scar that causes intense pain whenever he changes positions. Wilson was diagnosed with diabetes in the early 1990s.

Wilson applied for DIB on July 21, 1999, claiming disability since December 31, 1993, due to leg and back pain. The Regional Commissioner of the Social Security Administration denied Wilson's application initially and on reconsideration, finding that Wilson had not become disabled on or before March 31, 1995, when his insured status expired. Wilson then filed a timely request for a hearing before an ALJ. Following the hearing, the ALJ issued a decision finding that Wilson had not become disabled on or before March 31, 1995, because, taking into account his limitations, there were a significant number of jobs in the national economy that Wilson could perform.

In finding that Wilson had not become disabled while insured, the ALJ performed the required five-step analysis. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, the ALJ found that Wilson has not engaged in any substantial gainful activity since his disability onset date. Second, the ALJ determined that Wilson suffered from severe impairments on the last date he was insured—specifically, insulin dependent diabetes mellitus with neuropathy in the lower extremities, lumbar spondylosis and facet arthritis, coronary artery disease, entrapment neuropathy, and sympathetic mediated pain syndrome. Third, the ALJ concluded that Wilson's impairments did not meet or medically equal any of the listed impairments. Fourth, the ALJ found that, when his coverage expired, Wilson retained the residual functional capacity to perform a significant range of light work, but that Wilson could not perform any of his

past relevant work. Fifth, the ALJ determined that, given Wilson's residual functional capacity and vocational profile at the time his coverage expired, there were a significant number of jobs in the national economy that Wilson could perform, including a range of semi-skilled clerical jobs. Based on this last finding, the ALJ concluded that Wilson was not "disabled" at any time through the date he was last insured for benefits.

The Appeals Council of the Social Security Administration denied Wilson's request for review of the ALJ's decision, at which point the ALJ's decision became the final decision of the Commissioner of Social Security. *Miles v. Chater*, 84 F.3d 1397, 1399 (11th Cir. 1996). Wilson then commenced a civil action in district court for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). A magistrate judge issued a Report and Recommendation recommending that the district court affirm the ALJ's decision. The district court adopted the Report and Recommendation, and Wilson timely appealed.

Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants like Wilson. The regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination. 20 C.F.R. § 404.1527(d)(2) (2004). This requirement is part of the "treating source" regulation adopted by the Social Security Administration in 1991. *See generally Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).

Pursuant to this regulation, an ALJ must give more weight to opinions from treating sources since

these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a

unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Id.*

Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Id.* A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996). "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating

physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

It is an elemental principle of administrative law that agencies are bound to follow their own regulations. As the Ninth Circuit well summarized in applying this principle:

The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations "tends to cause unjust discrimination and deny adequate notice" and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, "even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed." *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L. Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts).

*Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (parallel citations and circuit court citations omitted). Consistent with this principle, courts have remanded the Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source, as § 1527(d)(2) requires. *See, e.g., Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Snell*, 177 F.3d at 134; *see also Halloran*, 362 F.3d at 33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we

encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.").

In the instant case, the ALJ has violated § 1527(d)(2) by failing to give good reasons for his rejection of Dr. DeWys's opinion. According to Wilson, DeWys treated him from January of 1993 through at least May of 2000. Wilson submitted DeWys's opinion to the ALJ. The DeWys opinion identified greater restrictions on Wilson's ability to work than those ultimately found by the ALJ, and stated that these deficits had been in effect since December 31, 1993. The opinion also contains what Wilson claims are notes made by DeWys contemporaneous with his treatment of Wilson. The ALJ stated in his ruling that he had "considered" DeWys's opinion, but concluded that while "this opinion may be an accurate assessment of [Wilson's] current limitations, the undersigned must assess the claimant's limitations on March 31, 1995, the date he was last insured for benefits."

The ALJ's summary dismissal of DeWys's opinion fails to meet the requirement that the ALJ "give good reasons" for not giving weight to a treating physician. It is uncontested that Dr. DeWys was Wilson's treating physician, and the record appears to make clear that Dr. DeWys treated Wilson during the period that he alleged he was disabled. *See e.g.,* J.A. at 176, 329. To state that Dr. DeWys's opinion "may be an accurate assessment," followed by a bald statement of the issue that the ALJ must ultimately resolve, can hardly amount to "giving good reasons" for rejecting Dr. DeWys's opinion.

The sentence in the ALJ's ruling might mean that, on the ALJ's reading, DeWys's opinion offered only a current assessment of Wilson's condition. If so, the ALJ's determination in this regard is not supported by substantial evidence, given the presence in the administrative record of treatment notes by DeWys for the earlier, relevant period. On the other hand, the sentence in the ALJ's ruling might mean that the ALJ understood DeWys's opinion and simply

rejected his assertion that Wilson suffered from the identified limitations while insured. If, in fact, the latter is the case, the ALJ did not give good reasons for this conclusion. In particular, the ALJ failed to clarify whether DeWys's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 404.1527(d)(2), did not identify the evidence supporting such a finding, and did not explain its application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight given to DeWys's opinion. Reversal is therefore required.

The ALJ's failure to give "good reasons" for not crediting DeWys does not constitute harmless error, notwithstanding the district court's reasoning and the Commissioner's argument on appeal. The district court stated that it "appears" that "the ALJ may have incorrectly interpreted Dr. DeWys's opinion as articulating only those limitations from which [Wilson] was then suffering, rather than recognizing that Dr. DeWys had determined that such limitations originated on December 31, 1993." However, the court found that DeWys's opinion was not supported by the record, and thus concluded that "there exists substantial evidence supporting the ALJ's determination, intentional or otherwise, to give little weight to Dr. DeWys's opinion." Echoing the district court, the Commissioner contends that, assuming for argument's sake that the ALJ misread DeWys's opinion, this mistake qualifies as harmless error. The Commissioner asserts that the ALJ's rejection of DeWys's opinion is supported by substantial evidence, as the ALJ "could" have relied on evidence in the record—namely, Wilson's testimony and the opinions of two consulting physicians, which, according to the Commissioner, contradict DeWys's opinion—to reject the opinion.

The argument is not persuasive in the context of this case. A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there

is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n.41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir. 1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action . . . found to be . . . without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

Our conclusion is consistent with the statement in *Connor v. United States Civil Service Commission*, 721 F.2d 1054, 1056 (6th Cir. 1983), that "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits *or deprived of substantial rights because of the agency's procedural lapses*" (emphasis added). A procedural right must generally be understood as "substantial" in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it. The Supreme Court has recognized the distinction between regulations "intended primarily to confer important procedural benefits upon individuals" and regulations "adopted for the orderly transaction of business before [the agency]." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538-39 (1970) (internal quotation marks omitted). In the former case, the regulation bestows a "substantial right" on parties before the agency, and "it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required."

*Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *see also Vitarelli v. Seaton*, 359 U.S. 535, 540 (1959); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). In contrast, in the case of procedural rules "adopted for the orderly transaction of business," an agency has the discretion "to relax or modify its procedural rules" and such action "is not reviewable except upon a showing of substantial prejudice to the complaining party." *Am. Farm Lines*, 397 U.S. at 539 (quotation omitted). Section 1527(d)(2) falls in the former category, creating an important procedural safeguard for claimants for disability benefits. *Snell*, 177 F.3d at 134.

That is not to say that a violation of the procedural requirement of § 1527(d)(2) could never constitute harmless error. We do not decide the question of whether a *de minimis* violation may qualify as harmless error. For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. *Cf. NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game"). There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation. However, none of these possibilities is present in the instant case, and the ALJ committed reversible error by depriving Wilson of the procedural right given to him by the agency's regulation.

Our decision in *Heston v. Commissioner of Social Security*, 245 F.3d 528 (6th Cir. 2001), cited by the Commissioner, does not compel a contrary result. In that case, the court held

that the ALJ's failure to discuss the report of the claimant's treating physician constituted harmless error, without discussing § 1527(d)(2). Despite his failure to address the treating physician's opinion, the ALJ in *Heston* had considered the limitations described by that physician in determining whether the claimant could find other work at the relevant step of the sequential analysis. *Id.* at 536. There was no reason to remand the case because, wittingly or not, the ALJ attributed to the claimant limitations consistent with those identified by the treating physician. *Id.* In contrast, Wilson has invoked § 1527(d)(2), and the ALJ explicitly rejected DeWys's opinion and found that Wilson had limitations less severe than those described by DeWys. Because the basis for the ALJ's dismissal of DeWys's opinion is unclear, and because DeWys's opinion is not inadequate as a matter of law, we cannot deem the ALJ's failure to "give good reasons" for its rejection of DeWys's opinion harmless error. *Brueggemann v. Barnhart*, 348 F.3d 689, 695-96 (8th Cir. 2003).

While the foregoing analysis requires reversal, Wilson's alternative argument does not. The ALJ did not err when, in the course of finding that Wilson could perform other work, the ALJ did not identify the transferable skills that Wilson had acquired during his work as a deputy sheriff.

In making a determination as to disability, an ALJ undertakes a five-step sequential evaluation process mandated by regulation. *Heston*, 245 F.3d at 534. First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past

relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). In many cases, the Commissioner may carry this burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990). However, if a claimant suffers from a limitation not accounted for by the grid, the Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden. *Id.* In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Heston*, 245 F.3d at 537-38; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The ALJ found that Wilson suffered from limitations beyond those accounted for by the grid, and therefore used the grid merely as a "framework" in determining whether Wilson could perform other work. The ALJ relied on the testimony of Paul W. Delmar, a vocational expert, in determining that, as of March 31, 1995, there were a significant number of jobs in the national economy that Wilson could perform. Delmar testified that an individual with Wilson's profile could

perform work existing in the regional economy (the State of Michigan) as of March 31, 1995, in any of 50,000 semi-skilled clerical jobs, such as order clerk, information clerk, account information clerk, stock and inventory clerk, and shipping and receiving clerk. Delmar testified that Wilson had acquired transferable skills while working as a deputy sheriff, but did not identify these skills. Likewise, the ALJ found that Wilson had transferable skills, but did not identify these skills in his opinion.

Wilson contends that the ALJ's failure to identify Wilson's transferable skills constitutes reversible error. He argues that the absence of such a finding makes it impossible for a court to review an ALJ's conclusion that a claimant could perform other work. He further contends that 20 C.F.R. § 404.1568 and SSR 82-41, a ruling promulgated by the Social Security Administration, require such a finding.

Wilson's arguments are unpersuasive. This court has held repeatedly that the testimony of a vocational expert identifying specific jobs available in the regional economy that an individual with the claimant's limitation could perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work. *See, e.g., Wright*, 321 F.3d at 616; *Cline,* 96 F.3d at 150; *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988). With respect to transferable skills, 20 C.F.R. § 404.1568 defines transferable skills, states how the agency determines that skills are transferable to other jobs, and describes a range of degrees of transferability of skills. The regulation does not explicitly mandate the enumeration of transferable skills at step 5. Wilson's conclusory argument does not supply a basis for reading such a requirement into the regulation.

Finally, contrary to Wilson's argument, SSR 82-41 does not require the identification of transferable skills in the instant case. We need not decide whether Social Security Rulings are binding on the Commissioner in the same way as

Social Security Regulations.[1] Even assuming that they are, an agency's interpretation of its own regulation is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation. *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578 (6th Cir. 2003). In relevant part, SSR 82-41 reads, "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision," and "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified." Soc. Sec. Rul. 82-14, 1982 WL 31389, at *7 (1982). The Commissioner insists that these passages apply only when an ALJ relies solely on the grid, in which cases the ALJ must ascertain whether the claimant has transferable skills in order to apply the grid. Wilson offers only a muddy and conclusory response to this argument, and, from our review of the relevant materials, the Commissioner's interpretation of SSR 82-41 appears reasonable. We therefore defer to the Commissioner's view.

For the foregoing reasons, we **VACATE** the judgment of the district court with instructions to **REMAND** to the Commissioner for further proceedings consistent with this opinion.

---

[1]According to a regulation, Social Security Rulings "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the Social Security Administration and "are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1) (2004); *see also Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000).