RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DAVID R. HARGETT,

          *Plaintiff-Appellant*,

    *v.*

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant-Appellee*.

No. 19-3718

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:18-cv-01917—William H. Baughman, Magistrate Judge.

Decided and Filed:  July 8, 2020

Before:  COLE, Chief Judge; CLAY and NALBANDIAN, Circuit Judges.

─────────────────

### COUNSEL

**ON BRIEF:**  Eric S. McDaniel, Matthew J. Kasper, THE LAW OFFICE OF MICHAEL J. MALYUK, Cuyahoga Falls, Ohio, for Appellant.  Meghan O' Callaghan, SOCIAL SECURITY ADMINISTRATION, Chicago, Illinois, for Appellee.

─────────────────

### OPINION

─────────────────

COLE, Chief Judge.  David Hargett appeals a federal magistrate judge's order upholding the decision of an administrative law judge ("ALJ") that denied Hargett social security disability benefits.  Hargett contends that the ALJ failed to give proper consideration to a functional capacity evaluation signed by his treating physician.  Because the ALJ erred, and this error was not harmless, we vacate with instructions to remand to the Commissioner.

## I.

Hargett was born in 1965. He has a high-school education and previously held jobs as a semi-truck driver, municipal worker, maintenance mechanic, and industrial cleaner. The last time he worked was in March of 2015.

On October 16, 2015, Hargett applied for disability insurance benefits, asserting a disability beginning March 6, 2015, due to various impairments, including high blood pressure, type-two diabetes, curvature of the spine, and chronic obstructive pulmonary disease ("COPD"). Records from Hargett's primary care physician, Dr. Nathan Lucardie, show that Hargett was receiving treatment for the various conditions listed on his application, making regular visits to Dr. Lucardie starting in 2014. Dr. Lucardie's records consistently indicate that Hargett suffered from ongoing shortness of breath, particularly with physical exertion.

In December 2015, upon referral by Dr. Lucardie, Hargett visited physical therapist John Capple at the MediGraph Testing Facility for a functional capacity evaluation ("FCE"). This evaluation indicated that Hargett had a maximum lifting capacity of 35 pounds and maximum carrying capacity of 20 pounds, meaning that he had the capability to perform work in the "medium strength" category under federal regulations. The evaluation also indicated, however, that Hargett could continuously stand for no more than five minutes; could continuously walk for no more than 0.1 miles; could never balance while standing, crouching, or walking; and could never crouch, stoop, or crawl. Accordingly, in his comments, Capple opined that Hargett "display[ed] capacity ranges in the sedentary and some light capacities with limited to no ability for medium and heavy capacities." (R. 12, PageID 359.) Dr. Lucardie reviewed the FCE and provided his signature in a designated spot.

Subsequently, at the request of the Ohio Division of Disability Determination, Hargett underwent a consultative physical examination in February 2016 with medical examiner Dr. Sushil Sethi. Dr. Sethi observed that Hargett could not walk on tip-toes or squat, but could get on and off the examination table without difficulty. Dr. Sethi also observed that Hargett had normal range of motion in the neck and mid-back, but restricted range of motion in the lower back. Dr. Sethi concluded that Hargett's "ability to do work-related physical activities such as

sitting, standing, walking, lifting, carrying, and handling objects may be slightly affected," but that Hargett could "sit 8 hours, walk 8 hours, and stand 8 hours" and could "carry 10–15 pounds frequently and 20–30 pounds occasionally." (R. 12, PageID 365.)

Hargett's claim for disability benefits was denied at the initial and reconsideration levels. Those decisions included reviews by state agency physicians, who determined that Hargett could sit, stand, or walk for 6 hours in an 8-hour workday, despite some physical, postural, and environmental limitations that affected his ability to perform work involving heights or heavy machinery. The state agency physicians also determined that Hargett could lift up to 50 pounds occasionally and up to 25 pounds frequently. Ultimately, the agency concluded that because Hargett could adjust to other work, he was not eligible for social security disability benefits.

Hargett requested a hearing before an ALJ, and on November 1, 2017, he testified at such a hearing. When asked by the ALJ what prevented him from working, Hargett said that he had "a lot of trouble with shortness of breath." (R. 12, PageID 114.) He also told the ALJ that his treatment for his COPD included using an inhaler on a daily basis and a nebulizer occasionally, and the treatment for his lower back pain involved physical therapy, a muscle relaxer, and Tylenol. He estimated that he could walk continuously for 100 to 150 feet, stand for 20 minutes at a time, and lift a gallon of water (or about 8 pounds) repeatedly.

A vocational expert also testified at the hearing. The ALJ posed a hypothetical question to the expert as to an individual's capacity to work, assuming someone of Hargett's age, education, and work history, who could perform light work and also could occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants; and must avoid all exposure to hazards such as unprotected heights, moving mechanical parts, and operation of motor vehicles. The vocational expert opined that there were several jobs in the national economy that such an individual could perform, including Inspector and Hand Packager, Assembler of Plastic Hospital Products, and Assembler of Electrical Accessories. In response to questioning by Hargett's counsel, the vocational expert further opined, based only his own experience, that each of the jobs identified could be performed sitting or standing as needed.

On December 29, 2017, the ALJ denied Hargett's disability claim.  The ALJ followed the five-step analysis required by the Social Security Administration's regulations.  *See* 20 C.F.R. § 404.1520(a)(4).  First, the ALJ found that Hargett had not engaged in any substantial gainful activity from his alleged onset date of March 6, 2015, through March 31, 2016, the last date on which Hargett was eligible to qualify for disability benefits (i.e., his "date last insured").  Second, the ALJ determined that as of his date last insured Hargett had severe impairments of degenerative disc disease, osteoarthritis, COPD, hypertension, diabetes, and obesity.  Third, the ALJ concluded that Hargett did not have an impairment or combination of impairments that automatically qualified him as disabled.  Fourth, the ALJ found that Hargett retained the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), but with some further restrictions, meaning that Hargett could not perform any of his past relevant work.  Fifth, the ALJ concluded that there were nevertheless other jobs that existed in significant numbers in the national economy that Hargett could have performed, given his age, education, work experience, and residual functional capacity.

In arriving at the determination of Hargett's residual functional capacity, the ALJ gave "great weight" to Dr. Sethi's opinion that Hargett could lift 10 to 15 pounds frequently, could lift 20 to 30 pounds occasionally, and could stand or walk during the course of an 8-hour workday.  The ALJ found this opinion to be "supported by [Dr. Sethi's] examination notes as well as consistent with the overall weight of the record."  (R. 12, PageID 94.)

In contrast, the ALJ gave only "partial weight" to the FCE, discounting in particular its indication that Hargett's ability to stand or walk did not meet any standard for work activity.  The ALJ reasoned that this opinion "was not based on a treating relationship," that "[t]he overall medical record does not indicate such significant limitations," and that Hargett "is not noted to have difficulty walking or standing."  (R. 12, PageID 93.)  Accordingly, the ALJ found that Hargett had the ability to perform work at a "light exertional level with greater postural limitations."  (R. 12, PageID 94.)  The Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner of Social Security.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009).

Hargett sought judicial review in the district court, where the parties consented to the jurisdiction of a magistrate judge. The magistrate judge affirmed, concluding that substantial evidence supported the ALJ's findings. Hargett timely appealed.

**II.**

We review the magistrate judge's decision de novo. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). At the same time, the Social Security Act limits our review of the underlying ALJ decision to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley*, 581 F.3d at 405; *see also* 42 U.S.C. § 405(g). Substantial evidence supports the ALJ's findings if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In other words, we affirm the ALJ's findings as long as they "are reasonably drawn from the record." *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010). But even where the ALJ's findings are otherwise supported by substantial evidence, the ALJ's failure to follow agency rules or regulations is a ground for reversal. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *accord Miller*, 811 F.3d at 833.

Hargett argues that the ALJ violated agency regulations by failing to consider his FCE, which Dr. Lucardie signed, as an opinion of his treating physician (i.e., a "treating-source opinion"). The Commissioner maintains that the FCE is not a treating-source opinion because it was completed by a physical therapist who had no treatment relationship with Hargett, and Dr. Lucardie's mere signature on the FCE does not elevate it to a treating-source opinion. The Commissioner, moreover, contends that any error is harmless.

**A.**

Classifying the source of an opinion is a question of law that we review de novo. *Blakley*, 581 F.3d 407. That said, we give great deference to any factual finding by the ALJ that bears on the issue, accepting it as long as it is supported by substantial evidence. *Id.*

Under the Social Security Administration's regulations, a "treating source" is any "acceptable medical source," including a licensed medical physician, who has an "ongoing treatment relationship" with the claimant. *See* 20 C.F.R. §§ 404.1502(a)(1); 404.1527(a)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (describing a "treating source" as "a medical source who regularly treats the claimant"). As the regulations make clear, an ongoing treatment relationship must be based on an individual's "medical need for treatment or evaluation," and cannot be based "solely on [the] need to obtain a report in support of [a] claim for disability." 20 C.F.R. § 404.1527(a)(2). Similarly, we have held that visiting a doctor once or twice does not create an ongoing treatment relationship. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

No one disputes that Dr. Lucardie had an ongoing treatment relationship with Hargett. Indeed, by the end of 2015, when Dr. Lucardie signed off on the FCE, he had seen Hargett no fewer than six times and was treating Hargett for various ongoing medical conditions, including diabetes, high blood pressure, and COPD. The ALJ, moreover, considered Dr. Lucardie to be Hargett's "primary care physician." We find no reason to doubt that Dr. Lucardie was a treating source with respect to Hargett.

## B.

Under the treating physician rule in effect at the time that Hargett filed his claim for disability in 2015, the opinion of a treating source, such as Dr. Lucardie, must be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *accord Gayheart*, 710 F.3d at 376. If the ALJ decides not to give a treating-source opinion controlling weight, the ALJ must still determine what weight to give the opinion by balancing a host of factors: the length, frequency, nature, and extent of the treatment relationship; the degree to which the treating source's opinion is supported by relevant evidence and consistent with the overall record; the specialization of the treating source; and any other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6); *see also Gayheart*, 710 F.3d at 376.

Separate from the treating physician rule, but closely related, is the requirement that the ALJ "always give good reasons" for the weight ascribed to a treating-source opinion.  20 C.F.R. § 404.1527(c)(2); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (calling the good reasons rule "an additional procedural requirement associated with the treating physician rule").  The purpose of the good reasons rule is twofold: first, "to let claimants understand the disposition of their cases"; and second, to "ensure[] that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Blakley*, 581 F.3d at 407 (quoting *Wilson*, 378 F.3d at 544); *accord Rogers*, 486 F.3d at 242–43 (quoting *Wilson*).

In light of the procedural protections that the good reasons rule is meant to afford, we have applied the rule broadly.  An ALJ fails to provide good reasons when the ALJ discounts a treating-source opinion without articulating the weight given to it.  *See Blakley*, 581 F.3d at 408. The ALJ must also provide an analysis of the factors under 20 C.F.R. § 404.1527(c).  *See Rogers*, 486 F.3d at 245–46; *see also Cole v. Astrue*, 661 F.3d 931, 938 (6th Cir. 2011) ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.").  Additionally, the existence of a contrary conclusion by a different physician does not give the ALJ license to discount a treating-source opinion and make his own determination without explanation.  *See Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2009). Finally, an ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion.  *See Gayheart*, 710 F.3d at 376–77; *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) (per curiam) ("[I]t is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

**C.**

With these principles in mind, we turn to the question of whether Dr. Lucardie's signature on the FCE, which was completed by a physical therapist, makes the FCE a treating-source opinion for purposes of evaluating Hargett's disability claim.  Our court has not squarely resolved this issue.  *See Brown v. Comm'r of Soc. Sec.*, 2015 WL 4275556, at *11 (N.D. Ohio July 14, 2015).  Hargett argues that, by reviewing and co-signing the FCE, Dr. Lucardie adopted the FCE report as his own, and it is therefore a treating-source opinion.  The Commissioner, on the other hand, argues that an opinion co-signed by a treating source should be evaluated as a treating-source opinion only if the two providers are part of the same treatment team providing ongoing care to the claimant.  The magistrate judge agreed with the Commissioner's position.

District courts in this circuit have arrived at mixed conclusions on this question.  Some have supported Hargett's position—concluding that an opinion co-signed by an acceptable medical source should be evaluated as the opinion of that acceptable medical source, regardless of whether both providers are part of the same treatment team.  *See, e.g.*, *Strickland v. Saul*, 2019 WL 4141534, at *5 (N.D. Ohio Aug. 30, 2019); *Rueda v. Berryhill*, 2018 WL 3304626, at *19 (N.D. Ohio June 22, 2018), *report and recommendation adopted sub nom. Rueda v. Comm'r of Soc. Sec.*, 2018 WL 3302928, at *1 (N.D. Ohio July 5, 2018); *Brown*, 2015 WL 4275556, at *11; *Fairchild v. Colvin*, 14 F. Supp. 3d 908, 917 n.5 (S.D. Ohio 2014).  Others have adopted the Commissioner's position—declining to find that an opinion co-signed by an acceptable medical source represents the opinion of the acceptable medical source unless the two providers are part of the same treatment team or practice.  *See, e.g.*, *Miller v. Comm'r of Soc. Sec.*, 2017 WL 2693536, at *7 (N.D. Ohio June 7, 2017), *report and recommendation adopted*, 2017 WL 2691817, at *1 (N.D. Ohio June 22, 2017); *McDaniel v. Comm'r of Soc. Sec.*, 2016 WL 5376249, at *10 (N.D. Ohio Sep. 23, 2016); *Mitchell v. Comm'r of Soc. Sec.*, 2016 WL 4507791, at *6 (N.D. Ohio Aug. 29, 2016); *Prill v. Comm'r of Soc. Sec.*, 2016 WL 462942, at *5 (W.D. Mich. Feb. 8, 2016); *Borden v. Comm'r of Soc. Sec. Admin.*, 2014 WL 7335176, at *9 n.2 (N.D. Ohio Dec. 19, 2014).

We decline to adopt a strict rule that a treating source who co-signs an opinion by a non-treating source must be part of the same team or practice as the non-treating source in order for

the opinion to be considered an opinion of the treating source.  We agree that "a doctor's co-signature indicates at a minimum that the doctor agrees with the other source's opinion." *Brown*, 2015 WL 4275556, at *11.  Given that a treating physician may adopt or ratify the opinion of a non-treating source by providing a signature, we see no reason that such an ability is lessened merely because the treating physician and non-treating source are not part of the same team or practice.

Additionally, we note that in this case it appears Dr. Lucardie referred Hargett to the MediGraph Testing Facility for the FCE.  Given that Dr. Lucardie was Hargett's treating physician and signed off on the results of the FCE, an FCE that Hargett obtained upon referral by Dr. Lucardie, we conclude that the ALJ should have considered the FCE as a treating-source opinion.

Given that the FCE in this case is a treating-source opinion, the ALJ's decision fails to provide good reasons for the weight given to it.  Although the ALJ stated that he gave the FCE "partial weight," the extent of the ALJ's reasoning is that "[the FCE] was not based on a treating relationship," "[t]he overall medical record does not indicate such significant limitations," and Hargett "is not noted to have difficulty walking or standing." (R. 12, PageID 93.)  The ALJ also reiterated that the "opinion overstates the postural limitations." (*Id.*)  These bare, conclusory statements neither satisfy the notice requirement of the good reasons rule nor allow us to review meaningfully whether the ALJ properly applied the treating physician rule.

First, although the ALJ's statements touch on some of the factors to be considered under 20 C.F.R. § 404.1527(c)(2)–(6)—e.g., supportability and consistency—there is no meaningful analysis of the factors or explanation of how the ALJ's balancing of the various factors led the ALJ to conclude that the FCE should be given only "partial weight."  The ALJ, moreover, completely discounted the nature and extent of Dr. Lucardie's treatment relationship with Hargett without explanation, saying simply that the FCE "was not based on a treating relationship." *See* 20 C.F.R. § 404.1527(c)(2)(ii).

Second, and more critically, the ALJ's conclusory statements fail to identify the specific ways in which the FCE is not consistent with Hargett's overall medical record.  By the same

token, the ALJ fails to identify the ways in which Dr. Sethi's opinion that Hargett can sit, stand, and walk for up to 8 hours—to which the ALJ gave "great weight"—*is* "consistent with the overall weight of the record." (R. 12, PageID 94.) For example, Dr. Lucardie's examination notes indicate several times that Hargett suffered from ongoing shortness of breath, especially with physical exertion. The ALJ's reasoning does not explain how the FCE is inconsistent with Dr. Lucardie's observation of Hargett's difficulty with physical exertion, or how Dr. Sethi's opinion is consistent with it. In short, the ALJ's decision demonstrates no apparent attempt "to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick." *See Friend*, 375 F. App'x at 552.

Finally, the Commissioner's claims of harmless error are unpersuasive. We have recognized some limited circumstances where a failure to give good reasons could constitute harmless error—namely, where "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" or where the Commissioner made "findings consistent with the [treating-source] opinion" or where the purposes of notice and ability for meaningful review have been satisfied. *Wilson*, 378 F.3d at 547; *accord Blakley*, 581 F.3d at 409. None of those circumstances apply here. First, the FCE's opinion that Hargett's ability to stand or walk does not meet any standard for work activity is not "patently deficient," because it is based on objective observation and defined criteria. Second, the ALJ's findings are not consistent with the FCE. Third, we cannot engage in meaningful review because, as we have articulated, the ALJ's decision does not make clear the specific ways in which the overall medical record is consistent or inconsistent with the various opinions on which the decision relies—or does not rely.

We are also unpersuaded by the Commissioner's argument that any error was harmless because the ALJ would have found Hargett not disabled in any event, given the testimony of the vocational expert. The vocational expert's testimony at the hearing was based on hypothetical situations posed by the ALJ and Hargett's counsel, not on any opinion or result of the FCE. Thus, it is not clear, based on the vocational expert's testimony, that the end result would have been the same had the ALJ given more credit to the FCE.

"We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from [ALJs] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley*, 573 F.3d at 267 (quoting *Wilson*, 378 F.3d at 545). We do so again today. We emphasize that we remand based on the ALJ's violation of the agency's procedural regulations, and we make no determination as to whether there is substantial evidence in the record on which to award or deny disability benefits.

## III.

For the reasons above, we vacate the judgment of the magistrate judge and remand with instructions to return the case to the Commissioner for further proceedings consistent with this opinion.