NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0423n.06

No. 20-1865

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TINA ROSE-L SMALLEY, | ) | **FILED** |
| | ) | Sep 03, 2021 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| COMMISSIONER OF SOCIAL SECURITY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

Before: ROGERS, BUSH, and LARSEN, Circuit Judges.

PER CURIAM. In 2015, Tina Rose-L Smalley filed a claim for Title II Social Security Disability Insurance (SSDI) benefits. After the Commissioner denied Smalley's claim, she sought judicial review. The district court agreed that the Commissioner erred by failing to give good reasons for discounting the medical opinion of Smalley's treating physician. But the court found this error harmless. We respectfully disagree. We therefore VACATE the district court's opinion with instructions to remand Smalley's case to the Commissioner for further proceedings.

I.

For several years, Smalley worked full time at an assisted-living facility, most recently as a resident care manager. In October 2012, she was injured in a car accident when she was rear-ended by a drunk driver. Since then, she has experienced lower back pain. Smalley continued to work as a resident care manager until May 2015. But she started missing more and more work

due to the pain and, eventually, her primary care physician, Dr. Marie-Louise Sagan-Yewah, advised her to quit. Smalley has not worked since.

Smalley filed for SSDI benefits on November 16, 2015, alleging an onset date of May 5, 2015—the day she stopped working at the assisted-living facility. At the time, Smalley was forty-five years old. She claimed that her back injury, arthritis, depression, anxiety, high blood pressure, chronic fatigue, and myalgia prevented her from working. The Social Security Administration (SSA) acknowledged that Smalley's conditions somewhat limited her ability to perform work-related activities. But it determined that these conditions were not severe enough to prevent Smalley from working altogether and therefore denied her application. Smalley then requested a hearing before an Administrative Law Judge (ALJ).

Based on Smalley's medical records, symptoms, and the testimony at the hearing, the ALJ determined that Smalley suffered from the "severe impairments" of degenerative disc disease of the lumbar spine, depression, anxiety, and posttraumatic stress disorder. He also found that Smalley's osteoarthritis had "no more than minimal impact" on her ability to work. Mindful of these conditions, the ALJ determined that Smalley retained the residual functional capacity to perform:

> [L]ight work as defined in 20 [C.F.R. §] 404.1567(b) except that she can climb no ladders, ropes or scaffolds. [Smalley] can occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. She must avoid concentrated exposure to excessive vibration and use of moving machinery. [Smalley] must avoid all exposure to unprotected heights. She is able to perform simple, routine and repetitive tasks in an environment isolated from the public with only occasional interaction with supervisors and coworkers.

Although these restrictions precluded Smalley from returning to work as a resident care manager, the ALJ found that she could successfully adjust to work as an office clerk, record clerk, or order filler. He thus found that Smalley was not disabled. Smalley requested further review by the

SSA's Appeals Council. But that request was denied, at which point the ALJ's opinion became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a).

Smalley then sought judicial review in federal district court, arguing that the Commissioner's decision was not supported by substantial evidence. *See* 42 U.S.C. § 405(g). For the most part, the district court rejected Smalley's arguments. But it agreed with Smalley that "the ALJ's analysis of Dr. Sagan-Yewah's opinion did not fully comply with the treating-physician rule" set forth in 20 C.F.R. § 404.1527(c)(2). Nevertheless, the district court held that this error was harmless and upheld the Commissioner's decision. Smalley timely appealed.

## II.

"We exercise de novo review of district-court decisions in Social Security cases." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). However, our review of the ALJ's underlying decision is more deferential. "We ensure only that it (1) 'is supported by substantial evidence' and (2) 'made pursuant to proper legal standards.'" *Brown v. Comm'r of Soc. Sec.*, 814 F. App'x 92, 95 (6th Cir. 2020) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see* 42 U.S.C. § 405(g).

On one hand, the substantial evidence standard, while requiring "more than a mere scintilla" of evidence, is a low bar. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison*, 305 U.S. at 229). If substantial evidence supports the ALJ's decision, then we defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quotation marks omitted).

"That said, the existence of otherwise substantial evidence supporting the Commissioner's decision cannot excuse the failure of an ALJ to follow a mandatory regulation that 'is intended to confer a procedural protection' for claimants." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 436 (6th Cir. 2018) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)). In this appeal, Smalley's chief contention is that the ALJ violated one such procedural regulation by discounting her treating physician's opinion without adequate justification. We agree. And, contrary to the district court, we hold that this error was not harmless.

A.

In evaluating evidence for SSDI cases filed prior to March 27, 2017,[1] an ALJ must give the medical opinion of a claimant's treating physician "controlling weight" as long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Wilson*, 378 F.3d at 544. This is "commonly known as the treating physician rule." *Rogers*, 486 F.3d at 242. And the rationale for the rule is simple. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Id.* (alteration in original) (quoting 20 C.F.R. § 416.927(c)(2)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (quoting 20 C.F.R. § 404.1527(c)(2)); *see*

---

[1] For cases filed on or after this date, the treating physician rule and good reasons requirement discussed in this opinion do not apply. *Compare* 20 C.F.R. § 404.1520c, *with id.* § 404.1527(c).

*also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). This is known as the "good reasons requirement." *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 536 (6th Cir. 2020). To satisfy the requirement, the ALJ's reasons must be sufficiently specific so as to help "claimants understand the disposition of their cases," and "permit[] meaningful appellate review of the ALJ's application of the [treating physician] rule." *Rogers*, 486 F.3d at 242–43 (quotation marks omitted); *see* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996). The ALJ "may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating-source opinion." *Hargett*, 964 F.3d at 552; *see also Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010) (per curiam).

Furthermore, "[i]f the ALJ decides not to give the treating physician's medical opinion controlling weight, [he] must determine what weight to give it by looking at 'the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician.'" *Fox*, 827 F. App'x at 536 (quoting *Blakley*, 581 F.3d at 406); *see also* 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4.

## B.

As Smalley's treating physician, Dr. Sagan-Yewah concluded that Smalley was "unable to stand up or [sit] down for more than 1-2 [hours]" at a time, was "not able to bend down," and was

"not able to lift more than twenty pound[s]." Dr. Sagan-Yewah further stated that Smalley would need to take unscheduled breaks every hour or so and would likely be absent from work three days per month due to flare ups in her back pain. Based primarily on Smalley's inability to sit or stand for prolonged periods of time, Dr. Sagan-Yewah opined that Smalley was incapable of performing a full-time job.

The ALJ acknowledged these "work preclusive limitations." But he provided the following analysis for affording the treating-source opinion only "little weight":

> This opinion is not supported by Dr. Sagan-Yewah's reports or supported by the record as a whole. Dr. Sagan-Yewah noted multiple times that the claimant had normal gait and station (Exhibit 3F).[2] The record shows that the claimant is able to perform a limited range of light work. In addition, the issue of disability is reserved for the Commissioner.

We find that "terse analysis" troubling. *Shields*, 732 F. App'x at 439.

Indeed, when we eliminate the conclusory statements—as we must, *see Hargett*, 964 F.3d at 552, 554—the *only* reason that the ALJ explicitly offered for discounting Dr. Sagan-Yewah's opinion is that her notes show that, at some point, she observed that Smalley had normal gait and station. "Gait means walking, and station refers to the posture used in standing and walking." Harvey L. McCormick, 1 Social Security Claims & Procedures § 8:123 (6th ed., Aug. 2020 update). So perhaps the treatment notes are reasonably inconsistent with Dr. Sagan-Yewah's conclusion that Smalley could not stand for prolonged periods. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (per curiam). But like the district court, we fail to see how those notes undermine the treating physician's opinion regarding Smalley's inability to sit for more than a couple of hours. The Commissioner does not even attempt to rebut the district court's

---

[2] Exhibit 3F consisted of 117 pages of treatment records from Dr. Sagan-Yewah's office.

conclusion on this front and continues to insist that a normal gait or posture is "a significant inconsistency" with the doctor's opinion.

The ALJ "had to deal" with this significant restriction on Smalley's ability to work to satisfy the good reasons requirement. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing SSR 96-2p, 1996 WL 374188, at *2). But he did not. Nor did he directly wrestle with Dr. Sagan-Yewah's opinion that Smalley would have to take near-hourly breaks and miss approximately three days per month at work due to her back pain. Thus, the ALJ failed "to follow the procedural requirement of identifying the reasons for discounting [Dr. Sagan-Yewah's] opinion[] and for explaining precisely how those reasons affected the weight accorded" to it. *Rogers*, 486 F.3d at 243; *see Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376–77 (6th Cir. 2013). That was error.

C.

The question then becomes, what do we do about it? "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson*, 378 F.3d at 545; *accord Morton v. Ruiz*, 415 U.S. 199, 235 (1974). And the Administrative Procedure Act (APA) directs us to "set aside agency action . . . found to be . . . without observance of procedure required by law." 5 U.S.C. § 706(2)(D). As such, "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion," we have generally remanded to the agency for further proceedings. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 545). We have done so even where "there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely." *Wilson*, 378 F.3d at 546.

Nevertheless, the APA also instructs us to take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706. "[T]he rule of prejudicial error is treated as an 'administrative law harmless error rule.'" *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2385 (2020) (alteration adopted) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659–60 (2007)); *see also Shinseki v. Sanders*, 556 U.S. 396, 406 (2009). So we must determine whether the ALJ's failure to comply with the good reasons requirement was harmless.

"[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983). And the good reasons requirement, we have said, implicates the latter concern; it "bestows a 'substantial right'" on disability claimants by "creating an important procedural safeguard" for the adjudication of their claims. *Wilson*, 378 F.3d at 547. Specifically, the object of the rule is to make clear to the claimant the ALJ's basis for rejecting the views of her treating physician. *See id.* at 548; *Hargett*, 964 F.3d at 554. Such clarity serves important interests of the losing claimant and of the agency, apart from assuring that substantial evidence supports the agency's decision. *Wilson*, 378 F.3d at 546. It serves the agency's interest in maintaining public confidence in the basic fairness of the administration of the Social Security program to have disappointed claimants at least understand why the government has rejected the opinion of the physician in whom the claimant has presumably the most confidence. *See id.* at 544. Violation of the rule is not harmless, then, if an ALJ's decision does not make clear to a reasonable reader why the opinion of the treating physician was not accepted. *See id.* at 548; *Cole v. Astrue*, 661 F.3d 931, 937–38 (6th Cir. 2011). In that case, the opinion has not "met the goal of § 1527[(c)(2)]—

the provision of the procedural safeguard of reasons." *Wilson*, 378 F.3d at 547; *see also Hargett*, 964 F.3d at 554.[3]

Although this is a close case, the ALJ's error was not harmless. The ALJ credited the opinion of Dr. Ramirez-Jacobs, a state agency medical consultant who concluded that Smalley was "able to perform a limited range of light work," finding that her opinion was more consistent with the record. Yet even if Smalley performed such work, it remains unclear whether she would still need to take unscheduled breaks every hour or miss three days of work per month due to flare ups in her back pain, as Dr. Sagan-Yewah opined.

To be sure, the ALJ summarized certain portions of Smalley's medical records—pointing out that previous X-rays and MRIs were negative or showed only mild pathology, that Smalley "ambulates without an assistive device," and that she "has had no back surgery" or "gait disturbance"—in support of his finding that Smalley could perform some unskilled light work. But the ALJ made no effort to explain why the cherry-picked factors he found relevant undermined Dr. Sagan-Yewah's conclusion that Smalley would need frequent breaks or would be unable to sit or stand continuously for more than one to two hours. Is Smalley's ability to walk without an assistive device incompatible with Dr. Sagan-Yewah's conclusion that Smalley would need to take unscheduled breaks? Do the medical tests shed any light on Smalley's ability to sit for continuous

---

[3] In *Wilson*, we identified two other ways that an ALJ's failure to comply with the good reasons rule might be held harmless: (1) where the Commissioner ultimately adopted the treating-source opinion; or (2) where the "opinion is so patently deficient that the Commissioner could not possibly credit it." 378 F.3d at 547. Neither applies here. The Commissioner did not adopt Dr. Sagan-Yewah's opinion. And Dr. Sagan-Yewah's opinion was based on extensive medical records from her years as Smalley's physician, as well as her access to medical records from Dr. Bez, Smalley's pain specialist. The medical questionnaire she completed, while truncated in some sections, sufficiently explained Smalley's condition and symptoms and delineated her functional limitations. Because Dr. Sagan-Yewah's opinion was "based on objective observation and defined criteria," it was not "patently deficient." *Hargett*, 964 F.3d at 554.

periods of time? The ALJ's opinion leaves such questions unanswered. Also, to the extent the ALJ found Smalley's "normal gait and station" determinative, it is not apparent why he disregarded records from Dr. Sagan-Yewah and Dr. Bez indicating Smalley had an "abnormal gait and station" and was "constan[tly] changing position between sitting and standing." In short, the mere recitation of certain facts in the record—unaccompanied by explanations as to how they bolster Dr. Ramirez-Jacobs's opinion and weaken Dr. Sagan-Yewah's opinion—is not sufficient. "[T]here must be some effort to identify the *specific discrepancies* and to explain why it is the treating physician's conclusion that gets the short end of the stick." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (emphasis added) (quoting *Friend*, 375 F. App'x at 552).

It is true that in some unpublished cases, we have stated that "[a]n ALJ may accomplish the goals" of the good reasons rule "by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010); *see also Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016) (per curiam); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 418 (6th Cir. 2011). But here, the ALJ failed to identify—in a way that Smalley could reasonably comprehend—what evidence in the record he thought undermined Dr. Sagan-Yewah's work-preclusive limitations. The ALJ simply stated that the treating physician's opinion was not "supported by the record as a whole."

Such a conclusory statement "dismiss[ing] a treating physician's opinion as incompatible with other evidence of record" is not enough to attack the supportability of a treating physician's opinion. *Hernandez*, 644 F. App'x at 473 (internal quotation marks omitted). For left with only a vague reference to the record "as a whole," it is unlikely that Smalley could discern what specific

evidence the ALJ relied upon in rejecting Dr. Sagan-Yewah's opinion. Was it the evidence discussed elsewhere in the ALJ's opinion? Inferences he drew from that evidence? Or some other evidence in the record altogether? The ALJ does not say.

In response, the Commissioner points to our decision in *Hernandez*. But that case is inapposite. The ALJ there rejected the treating physician's report as not supported by the objective medical evidence in the record with a cursory reference to what was "discussed above," earlier in the opinion. *Id.* at 474. Even though this language did not "specifically identify the previously discussed objective medical evidence," we held that any potential violation of the good reasons rule was harmless because it was "*clear* which evidence [the ALJ] was referring to." *Id.* (emphasis added). Now contrast that with our decision in *Hall*. In that case, we recognized the possibility that indirect reference to other evidence could satisfy the goal of the good reasons requirement. 148 F. App'x at 464. But we were "unable to identify the basis on which [the ALJ] rejected [the treating doctor's] lifting/sitting/standing restriction that led to his opinion receiving little to no weight," and we thus reversed the district court's upholding of the ALJ decision. *Id.* at 466–67.

The present case is more like *Hall* than *Hernandez*. The ALJ's overall discussion does not "make[] clear the basis on which the treating physician's opinion was rejected," *Friend*, 375 F. App'x at 552, and so this is not the "rare case of the ALJ's analysis meeting the goal of the [good reasons] rule" without meeting its letter, *Nelson*, 195 F. App'x at 472. We have emphasized that we will "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Hargett*, 964 F.3d at 554–55 (quoting *Hensley*, 573 F.3d at 267). We do so again here, but we take no position on whether there is substantial evidence in the record on which to deny benefits.

\* \* \*

The judgment of the district court is vacated, and we remand with instructions to return the case to the Commissioner for further proceedings consistent with this opinion.